**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and Hugh L. Rutledge, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 7953.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 19, 1959.

Decided March 3, 1960.

Robert S. Cahoon, Greensboro, N. C. (Herbert S. Thatcher, Washington, D. C., on brief), for appellants.

James M. Balcy, Jr., U. S. Atty., Asheville, N. C., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

Charged with wilful violations of injunctive orders of the United States District Court for the Western District of

North Carolina, the defendants were prosecuted in that court for criminal contempt. They were convicted. A fine of $50,000 was imposed upon the International and one of $5,000 upon the individual defendant, Rutledge. In addition, Rutledge was sentenced to imprisonment for eighteen months.

Overnite Transportation Company, a common carrier by truck, had arrangements for the interchange of freight in Asheville, North Carolina with several connecting carriers. Employees of those connecting carriers at their Asheville terminals, in May 1959, refused to handle Overnite's freight because of a labor dispute in which Overnite was engaged.

In a civil action brought by Overnite in the United States District Court for the Western District of North Carolina, temporary injunctions were granted. These prohibited Overnite's connecting carriers in Asheville, their officers and employees, from refusing to handle Overnite's freight.

The validity of these temporary injunctions has not been questioned.

■ Though the individual defendant, Rutledge, was present in the courtroom when the decision to grant the temporary injunctions was announced, he engaged, thereafter, in an extended course of conduct designed to prevent compliance with the orders of the court. He does not deny that his conduct was a wilful violation of the orders, except to the extent that he contends he had no actual knowledge that the orders had been filed.[1]

I

■ The principal questions arise out of the relationship between Rutledge, the individual defendant, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, his codefendant. Involved are questions of the validity of the service of process upon the International by delivery of a copy of the petition and order to Rutledge and of the International's substantive accountability for Rutledge's conduct.

Rutledge was the Secretary-Treasurer of Local No. 55 of the International. The question, then, is whether he was an agent of the International or agent only of an autonomous local. We think the finding of the District Judge, on the motion to quash the service, and of the jury, on the merits, that he was an agent of International is amply supported.

The local and the conduct of its affairs are regulated in detail by the International's constitution. That document also reserves extensive powers to still further regulate and control the local and its members, which powers may be exercised in some instances by a Joint Council, in others by an Area Conference, by the General President or the General Executive Board, decisions of subordinate bodies being subject to broad review by the General President and the General Executive Board.

*Membership.* Members of the local are members of the International. The local must accept as a new member any member of International holding a valid transfer card from another local. Upon request, it must issue such a transfer card to anyone of its members in good standing whose dues are current, and an individual loses his membership in International if he works in the jurisdiction of a new local and does not obtain a proper transfer.

The local may not refuse admission to membership of a driver who operates his own equipment under a lease or other arrangement, unless the General President decides that it may.

International may expel or suspend an individual member for any of a long list

[1]. There is no substance in this contention. He was present when the court announced that the orders would be filed. They were promptly filed, as were the bonds which they required. There was testimony that Rutledge was later shown a certified copy of one of the orders, that he expressed disdain for them and that his efforts to prevent compliance with the orders continued after service upon him of a citation for contempt because of their violation.

of causes, including such things as disloyalty to International or disobedience to International's rules or directions. Local's expulsion or suspension of its own members is subject to review by International.[2]

*Internal Affairs of Local.* International's constitution requires the local to hold at least one meeting of its membership each month and prescribes the rules of order of the meeting. It specifies the offices to be filled by the local and the duties of each officer, particularly those of the Secretary-Treasurer, who is the officer principally in charge of financial affairs and who has the responsibility of regularly reporting and accounting to International.[3] It regulates the terms of local offices and the time for holding elections. It sets up a procedure by which International may suspend officers of locals charged by an individual member or International with disloyalty, gross inefficiency or other offenses, and, after trial, International may remove or discipline any such officer. It gives International the right to audit the affairs of the local, and, for that purpose, to obtain possession of all of its books and records.

A charter is issued to the local upon a contract signed by the Secretary-Treasurer of the local in which he acknowledges that the charter and, if framed by the local, the frame are the property of International and will be returned to International upon demand. If the charter is revoked or suspended or the local put into trusteeship by the International, possession of all funds, property, books and records of the local must be delivered to International, and such properties will not be returned to the local unless the local is restored by International to good standing within two years.

A local may not dissolve or disaffiliate over the objection of seven members. If it does dissolve or disaffiliate, all of its funds, properties and records become the property of the International.

International's constitution also controls such things as minimum dues payable by individual members, the amount being substantially in excess of International's capitation taxes.

Except for stationery, the local must buy all of its supplies from International.

*External Affairs of Local.* The local may not engage in a strike, boycott or lawsuit, or become "involved * * * in any serious difficulty," without prior notice to International, which has the right to prevent or modify the proposed action of the local.

The local can negotiate for a collective bargaining agreement, but its terms must be approved by International. If the Area Conference negotiates on an area basis, however, its agreements, when approved by a majority of International's members in the area, are binding upon locals which do not wish to accept it. Area contracts, binding Local No. 55, were in effect in the Southeastern Area.

International's decisions in jurisdictional questions are binding on the local.

The local may solicit financial assistance from other locals only with the consent and approval of International.

International has the right to compel the local to accept an offer to arbitrate a dispute.

*Right to Exercise Direct Control.* If International's General President believes that any of the officers of the local are dishonest or incompetent, or that the local is violating International's constitution or laws, or that its affairs are being conducted in a manner adverse to International's interest, he may appoint a trustee who is empowered to seize the local, appoint officers, conduct its affairs and possess and manage its moneys and properties. The General President is re-

2. "International," as here used, includes the General President, the General Executive Board and other bodies set up by International whose decisions and orders are binding upon the local.

3. Even such things as how the Secretary-Treasurer disburses funds of the local, and upon what signatures, are controlled by International's constitution.

quired to hold a hearing either before or after appointing a trustee for a local, but the ultimate decision is his alone to make. There is a right of appeal from the decision of the General President to the General Executive Board.

Unless the local is restored to its former status within two years following the appointment of a trustee, it loses its conditional right to have its funds, property and records restored to its possession and International becomes the unconditional owner of all such property.

— — — —

This summary of the provisions of International's constitution bearing upon its control of the local is not exhaustive. The constitution gives the International control of many other details of the local's business and operations. What has been said, however, should suffice to show that the local is no autonomous body, but a subdivision of International subject to International's control.

The provisions of International's constitution were before the District Court when its motion to quash the service was denied. It showed such extensive control and direction of the local as to warrant the conclusion that the local is a component of the International. The local is the internal organizational means which the International employs to keep its accounts of its membership, to collect its revenues, and to execute and enforce its policies. If all of the other general and specific rights of control vested in International should prove insufficient to assure subservience of the local in a par-

ticular matter, the right to suspend the charter and seize immediate control of a local which adopts an independent course must be effective.

This controversy arose out of efforts to enforce a boycott of freight handled by an unorganized trucking company. This is activity in which, under International's constitution, a local could not engage except with International's specific approval. To say that Rutledge was acting for an autonomous and independent local and not for the International, under these circumstances, cannot be squared with realism.

If Rutledge was an agent of International, he clearly was the kind of agent upon whom process might be served. The record discloses that it was he who managed the affairs of the local, conducted its correspondence and acted for it. The Secretary-Treasurer of the local is the officer who is required by the International to sign the charter contract and to report and account in detail to International. It is to him to whom the International looks as the responsible head of that subdivision of its activity.

The only objection to the service is founded upon the contention that Rutledge was not shown to have been an agent of the International. Since we find that he was, we must sustain the District Court in overruling the motion to quash the service.

Other courts under similar circumstances, after examining the governing constitutions, have reached similar conclusions.[4] Of course, if the local is au-

4. United Mines Workers of America v. Patton, 4 Cir., 211 F.2d 742, 47 A.L.R. 2d 850; United Mine Workers of America v. Meadow Creek Coal Company, 6 Cir., 263 F.2d 52; Claycraft Co. v. United Mine Workers of America, 6 Cir., 204 F.2d 600; Operative Plasterers' and Cement Finishers' International Ass'n of United States and Canada v. Case, 68 App.D.C. 43, 93 F.2d 56; Wilson & Co., Inc. v. United Packinghouse Workers of America, D.C.S.D.N.Y., 83 F.Supp. 162. See also Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 4 Cir., 148 F.2d 403; Beaty v. International As-

sociation of Heat and Frost Insulators and Asbestos Workers, 248 N.C. 170, 102 S.E.2d 763; Spica v. International Ladies Garment Workers' Union, 388 Pa. 382, 130 A.2d 468; cf. Morgan Drive Away, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 7 Cir., 268 F.2d 871. Whether in light of the other evidence presented in Morgan Drive Away, we might have been constrained to affirm a finding by the District Court that there was no agency relationship, we need not consider.

tonomous and independent, a different result would be required.[5]

In this case, there was also evidence that Local No. 55 was in trusteeship, under the immediate, direct control of the International, the trustee being an official in International's Washington office and Rutledge his appointed agent. This came in through the testimony of a deputy marshal who served a subpoena duces tecum upon Rutledge and obtained a copy of International's constitution and other documents from him.

Among other things, the subpoena sought the production of a copy of the bylaws of Local No. 55, and a copy of the document which appointed the trustee. The marshal testified that Rutledge told him there were no bylaws [6] and, in his possession, no papers evidencing the appointment of the trustee. He said, however, the local was in trusteeship and that he, Rutledge, was acting for, and responsible to, the trustee.

The International now says that these extrajudicial declarations were not admissible to prove that Rutledge was an agent of the International.[7]

■■ Where the fact of agency has been established by other evidence, however, such declarations by the agent are unobjectionable.[8] When it had been made apparent that Rutledge was the chief executive officer of the local, in general charge of its affairs, and the man through whom the International acted and directed the conduct of its business in the area, it was within his apparent authority, in answer to a proper inquiry, to explain the status of the local and its current relation to the International.[9]

■ When the International is extensively engaged in activity within the district, it should be amenable to process there, and such process is appropriately served upon the agent who has general charge and direction of the activity. We think the objection to the service upon International was properly overruled.

### II

■ What has been said answers the related objection that the jury should not have been allowed to attribute to the International responsibility for Rutledge's conduct. The showing of the agency relationship made evidence of Rutledge's acts admissible against the International and furnished the basis for the jury's finding that the International was responsible for the acts which constituted the contempt.

### III

■ Complaint is made of the denial of a motion for a bill of particulars made just as the trial was about to commence.

---

5. Farnsworth & Chambers Co. v. Sheet Metal Workers International Association, Local 49, D.C.N.Mex., 125 F.Supp. 830; Isbrandtsen Co., Inc. v. National Marine Engineers' Beneficial Association, D.C.S.D.N.Y., 9 F.R.D. 541; Dean v. International Longshoremen's Association, D.C.W.D.La., 17 F.Supp. 748; Singleton v. Order of Railway Conductors of America, D.C.S.D.Ill., 9 F.Supp. 417; Christian v. International Association of Machinists, D.C.E.D.Ky., 7 F.2d 481.

6. There would be no universal need for bylaws, in any event, since International's constitution covers in detail the subjects with which bylaws are usually concerned. The constitution provides that a local not in trusteeship may adopt bylaws provided (1) they do not conflict with the constitution, and (2) are approved by International. The field within which such bylaws might become operative is very limited. There is specific provision, for instance, for a bylaw, if approved by International, permitting the payment of dues quarterly rather than monthly.

7. No such objection was made to this evidence when offered during the course of the hearing on the motion to quash the service. Proper objection was made when the same evidence was offered and received at the trial.

8. Wilson & Co. v. Clark, 259 Ala. 619, 67 So.2d 898; Bader v. Corbin, 95 Ohio App. 249, 115 N.E.2d 711; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Buchanan v. Wilson, 159 Va. 49, 165 S.E. 422; Adams v. Carlo, Mo.App., 84 S.W. 2d 682.

9. Restatement, Agency 2d, § 285.

This proceeding was begun by the service of an order to show cause and a petition which charged that the defendants "on or about the 8th day of June, 1959 and on various dates and occasions thereafter knowingly and wilfully solicited, urged and directed the companies and various persons, who were subject to said orders, to disregard and violate the provisions of said orders and threatened reprisal against them if they honored and obeyed the said orders of the Court." Attached to the petition were three affidavits in which reference was made to a number of specific acts within the allegations of the petition. The defendants were informed that the District Attorney intended to offer evidence of other, similar specific acts. The motion for a bill of particulars sought information in advance of the detail of these additional specific acts.

Made at the time the trial was about to commence, we think the denial of this motion was within the discretion of the District Judge.[10] The other specific instances were largely cumulative. The defendants offered no evidence in their behalf, not even with respect to the specific instances disclosed to them in advance through the affidavits, and there is nothing to show that their defense would have been aided or modified, in any way, had the motion been granted and the trial delayed.

#### IV

There are other contentions arising out of the receipt of evidence and comment of the District Court during the course of the trial. These we have examined, but find no merit in them.

#### V

The District Attorney appropriately invited attention to the fact that the power of the court to punish one found guilty of a criminal contempt is limited to the imposition of a fine or imprisonment, in the alternative.[11] Both forms of punishment may not be imposed for the same offense.[12] It was improper to impose both forms of punishment upon Rutledge.

While we affirm the judgments of conviction, the sentence of Rutledge will be vacated and the case, as to him, remanded for resentencing.

Affirmed in part, sentence of the individual defendant vacated and the cause remanded for resentencing.

10. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545; Bowles v. United States, 4 Cir., 50 F.2d 848; Bullock v. United States, 6 Cir., 265 F. 2d 683.

11. 18 U.S.C.A. § 401.

12. In re Bradley, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608; MacNeil v. United States, 1 Cir., 236 F.2d 149, 61 A.L.R.2d 1075; Carter v. United States, 5 Cir., 135 F.2d 858.