Joseph PRICE

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA**

and

**Eastern Express Inc.**

**Civ. A. No. 68–1663.**

United States District Court
E. D. Pennsylvania.

Jan. 13, 1969.

Edward B. Bergman, Philadelphia, Pa., for plaintiff.

Edward Davis, Philadelphia, Pa., for International Brotherhood of Teamsters, etc.

## MEMORANDUM OPINION

WEINER, District Judge.

The underlying controversy in this case concerns certain seniority rights under a collectively bargained labor agreement. The case is presently before this Court on defendant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America's (IBT) Motions to Dismiss and to quash service of process, wherein several objections and defenses to the maintenance of the action are raised.

Initially, the question of whether personal jurisdiction over IBT has been acquired is presented. Service was purportedly made upon IBT in Philadelphia by serving a copy of the complaint with an officer of Local 107. This motion raises the continuous problem of whether service upon the local union will be effective on the national union.

 Section 301(d) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(d), provides:

"The service of summons * * * of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization." [1]

Under appropriate circumstances, a Local may be an "agent" for a national or international union within the meaning of § 301(d) of the Act. Kreshtool v. International Longshoremen's Ass'n, 242 F.Supp. 551 (D.Del.1965). Basically, the decisions in the area have evolved a standard which stresses the "autonomy" of the local union as the controlling factor.[2] The standard was enunciated in its negative form in Morgan Drive Away, Inc. v. International Brotherhood of Teamsters, 268 F.2d 871 (7th Cir. 1959):

"Where [the] local labor organizations, affiliated with an international

parent union, are autonomous associations, service of process upon their officers or agents is not service 'upon an officer or agent' of the international within the meaning of Section 301 (d), 29 U.S.C.A. § 185." Id. at 877.

Two Circuit Court decisions have fully explored the relationship between the International Brotherhood of Teamsters and its local affiliates and have reached opposite conclusions. Morgan Drive Away, Inc. v. International Brotherhood of Teamsters, supra; International Brotherhood of Teamsters, etc. v. United States, 275 F.2d 610 (4th Cir. 1960). At first blush, the difference between the two decisions would seem to be a factual one rather than one that represents a different approach in applying the "autonomy" standard to IBT and its affiliates. In the Fourth Circuit decision, evidence was introduced which established that the applicable local was under trusteeship and the Court found that the local was not autonomous. However, a closer reading of the Fourth Circuit decision reveals many other areas of national control over the local evident in the constitution and charter of the union which seemingly did not impress the Seventh Circuit. In any event, the parties in the instant case agreed at the argument that when service was made on Local 107, it was in trusteeship and we think that the rationale of the Fourth Circuit decision is particularly relevant to our case.

 If a local is put under trusteeship, we understand, that among other consequences, that possesion of all funds, property, books and records of the local must be delivered to IBT and such properties will not be returned to the local unless the local is restored by IBT to good standing within two years. The trustee is empowered to seize the local, appoint officers, conduct its affairs and possess and manage its monies and prop-

---

1. See Fed.R.Civ.P. 4(d) (7).

2. See Kreshtool v. International Longshoremen's Ass'n, 242 F.Supp. 551 (D.Del.

1965) for an excellent analysis of the applicable cases.

erties. A study of IBT's constitution gives it control of many other details of the local's busines and operations. "The essential indicia of complete local autonomy" are "freedom in the Local to disregard the 'advice' of the International and to conclude negotiations independently." N.L.R.B. v. David Buttrick Company, 361 F.2d 300, 306 (1st Cir. 1966). Whether this type of freedom is present under any circumstances within the framework of the International is questionable; however, it certainly is not present when the local is under trusteeship. Thus, we find that Local 107 is not an independent autonomous local and hence service upon it will constitute effective service on the International. See Lavender v. United Mine Workers, 285 F.Supp. 869 (S.D.W.Va. filed April 30, 1968).

■ Defendant, IBT's reliance upon the provisions contained in Article XXIV of their constitution limiting service of process on IBT to elected officers is misplaced. Clauses which attempt to limit or oust the Courts of proper jurisdiction are not sufficient to negate proper service under the applicable statute. See Boyd v. Grand Trunk Western R. R., 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949); Home Insurance Company of New York v. Morse, 87 U.S. (20 Wall) 445, 22 L.Ed. 365 (1874).

In addition to its attack on the personal jurisdiction of the court, defendant IBT has filed what it terms a Supplemental Motion to Dismiss which is in fact a motion under Federal Rule of Civil Procedure 12(b) (6) for failure to state a claim upon which relief can be granted. IBT alleges that plaintiffs are without capacity or standing to sue arguing that in the absence of contrary language in the collective bargaining agreement between an employer and a union, individual employees have no standing to attack interpretations of the collective bargaining agreement by the contracting parties.

■ This case deals with the very troublesome problem of "dovetailing." [3] Defendant, Eastern Express Inc., a trucking company which maintains terminals and relay points in the east and middle western parts of the United States is a party to a collective bargaining agreement with IBT. Pursuant to paragraph (e) of Article 8 of the agreement, Eastern made applications for changes of operations involving its terminals and relay points in several cities. Eastern's request was deadlocked before the Joint Area Committee and was finally granted when it was brought before a Multi-Conference Committee. One of the terms of the decision in Eastern's case was that the employees affected in the change be dovetailed in those geographic points of domicile. Plaintiffs allege that IBT and Eastern have breached the terms of the collective bargaining agreement because they failed and refused to abide by the provisions of Article 5, paragraph 5(b) (2) of the agreement which states that transferred employees:

> "shall go to the bottom of the seniority board and shall have the right of job selection only in accordance with his seniority at such terminal."

They further allege that IBT breached its duty of fair representation. They cite the fact that IBT was the exclusive bargaining representative for both the transferred drivers and plaintiffs and that the dispute was between these two groups rather than employee and employer. The breach occurred by failing to enforce the provisions respecting terminal seniority and as a result of the conflict of interest position of the Teamster representatives on the two committees who were obliged either to refrain

3. "Dovetailing" is a labor relations term referring to some system of unifying on one "board" two previously separate seniority lists. Bieski v. Eastern Automobile Forwarding Company, 396 F.2d 32, 35, n. 3 (3d Cir. 1968).

from participating or to participate only after full disclosure of all relevant facts.

 We believe that plaintiffs have alleged facts sufficient to state a claim upon which relief can be granted necessary to withstand the 12(b) (6) motion. The decision of the Supreme Court in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), where the Court reaffirmed the principle that a union's duty of fair representation included its activities in administering a collective bargaining contract as well as negotiating it, is persuasive. In that case, where a joint grievance committee decided to dovetail the seniority lists of two companies, the complaining employees alleged: (1) That in reaching a settlement of the grievance, the union had exceeded the terms of the grievance procedure in the collective bargaining agreement and (2) The settlement was obtained by dishonest union conduct in breach of its duty of fair representation. Though the Court ruled against the plaintiff on the merits, it did find that the complaint stated a cause of action under section 301 of the Labor Management Relations Act.[4] Furthermore, the *Humphrey* decision indicates that both of plaintiff's claims stated a cause of action under section 301. In addition to the charge of hostile and arbitrary discrimination on the part of the union, plaintiff contended that the joint committee lacked power to dovetail seniority rights because there was no absorption of one company by another within the meaning of the governing contract provision. The opinion suggests that where the parties to a collective bargaining agreement purport to act in accordance with a collective bargaining agreement, a court should determine whether the contract language reasonably bears the interpretation agreed to by the parties.[5]

In the instant case, plaintiffs have alleged that the union and Eastern have breached the collective bargaining agreement by failing to invoke paragraph 5 (b) (2) of article 5, which deals with the closing of terminals and transfer of employees, and instead treated the problem as one arising under section 3, dealing with the absorption of carriers, or under section 7 which would allow the parties to reach a solution in situations not covered by the rules, as well as a breach of the duty of fair representation. The Court in *Humphrey* dealing with similar provisions stated, "Reconciliation of these two provisions going to the power of the committee under the contract itself permitted an issue for the court, not the committee to decide. *Humphrey* supra at 346, 84 S.Ct. at 370 n. 8. A recent Third Circuit decision has taken this type of approach to a similar "dovetailing" problem. In Bieski v. Eastern Automobile Forwarding Company, 396 F.2d 32 (3d Cir. 1968), which dealt with the question of whether a sale of real estate and operating equipment fell within the ambit of the "absorption" section under the contract, the court noted the problem in having the same union represent competing groups of employees and stated that the decision of the committee must be "rigorously scrutinized for reasonableness." Id. at 40.

An extremely constructive suggestion has been made that when an employee complains of the administration of an existing collective bargaining agreement, a determination of the union's duty toward the employee need not be separated from an analysis of the language of the

---

4. L.M.R.A. § 301(a), 29 U.S.C. § 185(a) states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties * * *."

5. For an excellent discussion of this point see T. Lewis, Fair Representation in Grievance Administration, 1967 Supreme Court Review 81.110.

contract under which he is claiming. The court would view the problem as a whole, avoid the breach of duty-contract interpretation analysis, and possibly develop requirements of fair dealing which demand more than the absence of hostility and invidious discrimination. T. Lewis, Fair Representation in Grievance Administration, 1967 Supreme Court Review 81, 116. In any event, plaintiffs have stated a claim upon which relief can be granted. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1966); Humphrey v. Moore, supra; Bieski v. Eastern Automobile Forwarding Company, supra; Brady v. Trans World Airlines, Inc., Nos. 16266–16268, 401 F.2d 87 (3d Cir. filed August 13, 1968).

Finally, defendant IBT contends that this court is without jurisdiction of the subject matter of this action because plaintiffs have failed to exhaust mandatory internal remedies under the constitution of the defendant International Union. The genesis of this action stems from defendant, Eastern's application for change of operations. As noted before, Eastern's application was deadlocked before the Joint Area Committee and finally resolved before a Multi-Conference Committee. The union members of which were appointed by and acted for IBT and the competing employees with attendant jurisdiction over seniority rights as provided in paragraph (e) of Article 8 of the agreement. After complete agreement by the union and Eastern concerning dovetailing, the union now insists that the complaining employees seek relief through intra-union remedies.

 Assuming that the doctrine of exhausting intra-union remedies before resort to judicial relief is applicable to the facts presented, the exhaustion of internal remedies is not completely mandatory but may be dispensed with if in the exercise of its discretion the court determines that the pursuit of available remedies is not required or would prove futile. Lavender v. United Mine Workers, 285 F.Supp. 869 (S.D.

W.Va.1968); Simmons v. Avisco, Local 713, Textile Workers Union of America, 350 F.2d 1012 (4th Cir. 1965); United Brotherhood of Carpenters and Joiners of America v. Brown, 343 F.2d 872 (10th Cir. 1965). It seems futile to us to require that plaintiffs be required to exhaust internal union remedies in the face of a united labor-management position. A serious question of whether the union could consistent with its duty of fair representation participate in any such procedure is presented. In a similar situation, the Third Circuit in Brady v. Trans World Airlines, Nos. 16266–16268, 401 F.2d 87 (3d Cir. filed August 13, 1968) stated in connection with an adjustment board that would be representative of both the union and the employer:

> "There is good reason for denying the jurisdictional authority of adjustment boards in so far as controversies between employees and their bargaining representatives are concerned. The membership of such boards is designed to give representation to management and to the union. Normally the board's composition would present no problem since its express statutory authority to hear grievances between employees and their employers arising out of the collective bargaining agreement. In such a dispute the employee would expect his union, acting under its duty to prosecute fairly the grievances of its members, to represent him before the board. This scheme, however, overlooks the possibility that the union's interest might conflict with the employee's and this is especially so in cases where the employee is charging the union with hostile discrimination. In such circumstances, the union can hardly be expected to press the employee's claim vigorously and forthrightly. The District Court's statement on this point bears reiteration:
>
> > 'It is simply repugnant to our standards of fundamental fairness and totally unrealistic to require an em-

ployee to submit a dispute he has with his bargaining agent for final determination to persons selected by and representing the bargaining representative.' "

Plaintiffs do not have to exhaust internal union remedies in the present case. See also N.L.R.B. v. Industrial Union of Marine, etc., Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968).

### ORDER

Defendant, International Brotherhood of Teamsters, Chauffeurs, Warehouseman and Helpers of America's motions to dismiss for lack of personal jurisdiction, for lack of subject matter jurisdiction and for lack of standing or capacity to sue are denied.

It is so ordered.