[No. 3037–2. Division Two. April 24, 1979.]

MARY HORDYK, ET AL, *Appellants,* v. CLALLAM COUNTY, ET AL, *Respondents.*

160

*Jerry B. Edmonds* and *Michael E. Merrill,* for appellants.

*Craig A. Ritchie, Prosecuting Attorney, Vance, Davies & Roberts,* and *Herman Wacker,* for respondents.

REED, J.—This lawsuit, already 4 years old, comes before the court for review of a partial summary judgment dismissing from the suit two defendants, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (IBT) and Joint Council of Teamsters Union No. 28 (JC 28). The sole issue is whether the two parent unions, IBT and JC 28, can be held vicariously liable for what Teamsters Local 589 did in the negotiation, execution and enforcement of a union security provision contained in a collective bargaining agreement with Clallam County. Based on the pleadings and other documents submitted by the parties, we find there is no factual dispute as to the parent unions' contention that they had nothing to do with the union security provision, and therefore we

affirm the summary judgment dismissing them from the suit.

The 1974 complaint basically challenges the constitutionality of a union security provision contained in a 1973 labor agreement negotiated and executed by Clallam County and Teamsters Local 589. The union security provision conforms to RCW 41.56.122,[1] and requires all Clallam County courthouse employees, with some exceptions, to join Local 589 as a condition of employment. Plaintiffs Mary Hordyk and Sharon Radke joined the union under protest, and on November 14, 1974, they filed this suit challenging the union security provision on both statutory and constitutional grounds. Plaintiffs asked for a declaratory judgment striking down RCW 41.56.122 as unconstitutional; an injunction barring the county and the union from enforcing the terms of the union security provision; damages in the amount of dues paid to the local; and reversal of an adverse ruling in a state unfair labor practice complaint brought against Clallam County to protest their

---

[1]RCW 41.56.122 provides:

"Collective bargaining agreements—Authorized provisions. A collective bargaining agreement may:

"(1) Contain union security provisions: *Provided,* That nothing in this section shall authorize a closed shop provision: *Provided further,* That agreements involving union security provisions must safeguard the right of nonassociation of public employees based on bona fide religious tenets or teachings of a church or religious body of which such public employee is a member. Such public employee shall pay an amount of money equivalent to regular union dues and initiation fee to a nonreligious charity or to another charitable organization mutually agreed upon by the public employee affected and the bargaining representative to which such public employee would otherwise pay the dues and initiation fee. The public employee shall furnish written proof that such payment has been made. If the public employee and the bargaining representative do not reach agreement on such matter, the commission shall designate the charitable organization. When there is a conflict between any collective bargaining agreement reached by a public employer and a bargaining representative on a union security provision and any charter, ordinance, rule, or regulation adopted by the public employer or its agents, including but not limited to, a civil service commission, the terms of the collective bargaining agreement shall prevail.

"(2) Provide for binding arbitration of a labor dispute arising from the application or the interpretation of the matters contained in a collective bargaining agreement."

forced membership in the union. They named 11 governmental defendants and 3 union defendants. The unions were Local 589, IBT and JC 28.

IBT and JC 28 moved for summary judgment to dismiss them from the case as defendants. They argued that plaintiffs had set out no facts to establish an agency relationship by which IBT or JC 28 could be held responsible for Local 589's dealings with Clallam County Commissioners or with plaintiffs. Additionally, an affidavit was submitted by Arnold G. Weinmeister, President of JC 28 and Twelfth Vice President of IBT, which stated flatly that neither JC 28 nor IBT

> is party to any collective bargaining agreement executed between Teamsters Local Union No. 589 and Clallam County. Furthermore, neither the International Union nor Joint Council No. 28 have at any time participated in the negotiation, administration or enforcement of any collective bargaining agreement between Teamsters Local Union No. 589 and Clallam County, nor have those Bodies acted through Norman Pollock [Secretary of Local 589] or otherwise to make demands upon the Plaintiffs to join any Labor Organization.

In response to the summary judgment motion, plaintiffs submitted a copy of the IBT constitution. They argued that its provisions are so strongly worded that Teamsters Local 589 should be deemed a mere agent of IBT and JC 28 in matters of collective bargaining and in the setting of membership requirements. Plaintiffs, however, made no allegations that IBT or JC 28 specifically had initiated, participated in, authorized, ratified, or threatened sanctions against Local 589's efforts regarding the union security agreement.

The trial court granted the motion for summary judgment and dismissed IBT and JC 28 as defendants. The court declined to keep the two parent unions in the suit without at least some allegation that the parents had taken affirmative action with regard to the union security agreement. It concluded that the terms of the IBT constitution

by themselves were insufficient to justify holding IBT and JC 28 liable under a vicarious liability theory.

■ We believe the trial court reached the correct result. It is widely recognized that employees of a local union can be agents for the local without automatically becoming agents for the parent union; in several cases courts have held a local union open to liability while dismissing the complaint against the parent union. *See Marshall's Constr. Inc. v. Local 549 of the United Ass'n of Journeymen,* 74 Wn.2d 120, 124, 443 P.2d 529 (1968); *Ford v. United Bhd. of Carpenters & Joiners,* 50 Wn.2d 832, 839, 315 P.2d 299 (1957); *NLRB v. International Longshoremen's & Warehousemen's Union, Local 10,* 283 F.2d 558, 566, 100 A.L.R.2d 348 (9th Cir. 1960); *Artesia v. United Steelworkers,* 87 N.M. 134, 529 P.2d 1255 (1974); *Stringer v. American Fed'n of State, County & Mun. Employees Int'l,* 86 N.M. 760, 527 P.2d 801 (1974). *See also* 39 Wash. L. Rev. 217, 222–23 (1964).

Washington courts have followed the rule that

["]in cases involving labor union locals, which are subordinate components of the international unions but have a prescribed independence in the management of their internal affairs, . . . the international will not be held liable for obligations incurred or acts done by the local in the ordinary conduct of the latter's affairs *in the absence of participation in or ratification of those obligations or acts.*"

(Italics ours.) *Marshall's Constr. Inc. v. Local 549 of the United Ass'n of Journeymen, supra* at 124, quoting *Ford v. United Bhd. of Carpenters & Joiners, supra* at 839.

■ Plaintiffs do not deny that the negotiation, execution and enforcement of a union security agreement are within the ordinary conduct of Local 589's business. They have submitted no evidence that the parent unions took any specific action with regard to Local 589's efforts to secure and enforce the union security agreement. Weinmeister's affidavit denying complicity stands undisputed,

and we must accept it as true for summary judgment purposes.

Plaintiffs, in effect, argue that parental collaboration with the local was inevitable because of various provisions in the IBT constitution. But even assuming for the moment that the constitutional provisions alone could be sufficient to prove a parent union vicariously liable for acts of a local, a review of the relevant provisions in the IBT constitution reveals nothing which could be interpreted to give IBT or JC 28 direct controls over Local 589's efforts to bargain for or enforce the union security agreement complained of here. The primary source of parental control over Local 589's collective bargaining activities lies in Article XII, § 11, entitled "Wage Scales and Approval Thereof." The section requires locals to submit proposed labor contracts to joint or area councils for approval of provisions pertaining to wage scales and working conditions. The purpose is to ensure uniformity of earnings and working conditions in any given region. The article by its own terms limits parental veto power to matters regarding wages and working conditions. Nowhere is the veto power extended to contract provisions such as union security agreements. Nowhere are locals required to bargain for or secure union security agreements. Nowhere does the article require disciplinary action when a local fails to obtain a union security agreement from an employer in a labor contract. In short, locals nowhere are denied the autonomy to secure and enforce union security provisions independently of the parent unions' advice.

Plaintiffs cite numerous provisions in the IBT constitution which purport to give IBT and JC 28 substantial control over locals' activities other than collective bargaining. We need not consider those provisions because parental control of the local's activity outside of collective bargaining areas is irrelevant to the narrow issue we address here.[2]

---

[2]Courts have split in their attempts to resolve the broad issue of whether the International Brotherhood of Teamsters (IBT) constitution, standing alone,

Plaintiffs argue that IBT and JC 28 are liable to them for damages in the amount of a per capita tax paid by Local 589 to the two parent unions. We disagree. The per capita tax is paid from the local's general fund based on the total number of its members. The local is responsible to pay the tax—not the local members. It must pay the tax regardless of whether the members pay their dues. Plaintiffs have no direct financial obligations to the parent unions and thus it is improper for them to seek recovery of dues from the parent unions.[3]

In sum, the sole evidence regarding the agency issue in this summary judgment proceeding consists of Weinmeister's affidavit denying complicity of the parent unions. Plaintiffs have failed to provide evidence to contradict the affidavit. In the absence of a factual dispute on the issue, we have no choice but to hold as a matter of law that Local

---

makes Teamsters' locals agents of IBT for all purposes. Some have refused to hold IBT vicariously liable for a local's action where the IBT constitution was the only evidence submitted to show the alleged agency relation. *See for example, Morgan Drive Away, Inc. v. International Bhd. of Teamsters*, 268 F.2d 871, 877 (7th Cir. 1959); *Barefoot v. International Bhd. of Teamsters*, 424 F.2d 1001, 1004 (10th Cir. 1970). *See also Harper v. Teamsters*, 93 L.R.R.M. 2603, 2604 (S.D. Miss. 1976); *International Bhd. of Teamsters, Local 959 v. King*, 572 P.2d 1168, 1177 (Alaska 1977).

Other courts have held that the locals in question were agents of IBT, basing their decisions at least partly on the IBT constitution's extensive controls over various affairs of locals. *See for example, International Bhd. of Teamsters v. United States*, 275 F.2d 610 (4th Cir. 1960); *Price v. International Bhd. of Teamsters*, 46 F.R.D. 18 (E.D. Pa. 1969). In both *International Bhd. of Teamsters v. United States, supra*, and *Price*, however, the locals involved were under trusteeship of IBT and in fact had virtually no autonomy in their daily affairs. *See also Great Coastal Express, Inc. v. International Bhd. of Teamsters*, 511 F.2d 839 (4th Cir. 1975) (citing with approval *International Bhd. of Teamsters v. United States, supra*, but holding the parent union jointly liable with a local on a showing that the parent actually participated in the local's illegal activities).

[3]We note that the removal of International Brotherhood of Teamsters and Joint Council of Teamsters Unions No. 28 as defendants in no way damages plaintiffs' ability to obtain the full relief requested. There has been no claim that Teamsters Local 589 would be unable to pay back the relatively insubstantial amount of back union dues alleged as damages in the complaint.

589 independently negotiated, executed and enforced the union security agreement with Clallam County.

The summary judgment dismissing IBT and JC 28 as defendants is affirmed.

PEARSON, C.J., and SOULE, J., concur.