**NAVIOS CORPORATION**

v.

**NATIONAL MARITIME UNION OF AMERICA et al.**

**UNIVERSE TANKSHIPS, INC.**

v.

**NATIONAL MARITIME UNION OF AMERICA et al.**

**Civ. A. Nos. 41349 and 41350.**

United States District Court
E. D. Pennsylvania.
Aug. 28, 1968.

W. Charles Hogg, Jr., and Richard H. Elliott, Philadelphia, Pa., for plaintiff.

Richard H. Markowitz, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

TROUTMAN, District Judge.

These two actions represent a long history of litigation arising out of the alleged picketing of the Liberian flag vessel, S. S. ORE MONARCH, in Philadelphia, from October 21, 1960, to March 15, 1961. Universe Tankships, Inc., owner of the vessel, and Navios Corporation, the time charterer of the vessel, specifically complain of tortious interferences by the defendants with the movement of the vessel by inducing, encouraging and coercing breaches of contract between themselves and firms which were to supply the vessel with necessary port services. Presently before the Court for disposition is the motion of the defendant Seafarers' International Union of North America, hereinafter referred to as SIUNA, to quash service of process.

Service of process was made in this case upon SIUNA by the delivery of a copy of the complaint at the office of the Atlantic, Gulf, Lakes and Inland Waters District, hereinafter referred to as AGL&I, in Philadelphia. The sole issue presented by the instant motion to quash therefore is whether service of process upon AGL&I is effective service upon SIUNA. The disposition of the motion turns upon whether AGL&I and SIUNA are separate autonomous entities, or whether AGL&I is merely a part of SIUNA and an agency through which it carries on its work. Krulikowsky v. Metropolitan District Council of Philadelphia, 270 F.Supp. 122 (E.D.Pa.1967).

An examination of the record discloses [1] that SIUNA is an unincorporated maritime association composed of a number of affiliated local unions and district organizations. It maintains no office or other business location in Pennsylvania. It maintains no bank account, mailing address, telephone listing, or other business facility within the Commonwealth. It owns no Pennsylvania property of any kind and has never paid, or been called upon to pay, any Pennsylvania tax.

One of the district organizations of SIUNA is the AGL&I which maintains an office and does business in Pennsylvania. The precise nature of the rela-

[1]. The records to which we have referred for the disposition of the instant motion consist of the constitutions of SIUNA and AGL&I, the oral depositions with exhibits attached of John Fay, Port Agent in Philadelphia for AGL&I, Al Kerr, Secretary-Treasurer of SIUNA and AGL & I, and Earl Shepherd, Vice President of SIUNA and Vice President of the Atlantic Coast District of AGL&I, and the affidavits of Richard H. Markowitz, counsel for SIUNA, and Richard H. Elliott, counsel for plaintiffs; also considered by the Court were the affidavit of W. Charles Hogg, Jr., counsel for plaintiffs, and the minutes of the November 25, 1959 meeting of IMWU, both of which were submitted after oral argument.

tionship between SIUNA and AGL&I as disclosed by this record is as follows:

1. SIUNA charters its affiliates and all members of its affiliates are members of SIUNA.

2. Although the President, the Secretary-Treasurer and a Vice President of SIUNA and AGL&I are identical, they are elected at different times, for different terms, in different fashions and by different constituencies. The offices of the principal officers of AGL&I are located in New York. In that the headquarters of SIUNA are maintained wherever the office of the President is located, the offices of the President of SIUNA and AGL&I are physically identical.

3. Collective bargaining agreements between employers and the AGL&I on behalf of its constituents are negotiated by representatives of AGL&I independent of SIUNA and all matters in connection therewith and all strikes incidental thereto are controlled by AGL&I independent of SIUNA.

4. SIUNA possesses legislative, executive and judicial powers. The judicial powers of SIUNA encompass the resolution of grievances of members against affiliates and grievances between affiliates.

5. Dues are paid by members of AGL&I directly to AGL&I and the AGL&I in turn pays a per capita tax to SIUNA. Dues are set by AGL&I and the per capita tax rate is set by SIUNA. By virtue of its constitution SIUNA possesses the power to audit the books of its affiliates to determine whether the per capita tax it receives from a given affiliate is accurate. SIUNA has never had occasion to exercise that power with respect to AGL&I.

6. All dues, assessments, and other monies paid to AGL&I and all books, records, property and assets in the possession of AGL&I are the property of AGL&I and not that of SIUNA. If AGL&I is expelled or dissolved, secedes or withdraws, or is otherwise reorganized, the property and assets of AGL&I remain its property and do not revert to SIUNA.

7. SIUNA and other defendants organized the International Maritime Workers Union, hereinafter referred to as IMWU, for the purpose of implementing their policy against slave labor standards and unfair labor tactics. IMWU organized and participated in the picketing activity which is the subject-matter of this litigation.

The relationship of International and district organization is not of itself a sufficient basis for subjecting the International to the jurisdiction of the forum state. Krulikowsky v. Metropolitan District Council of Philadelphia, supra; Keenan v. Metropolitan District Council of Philadelphia, 266 F.Supp. 497 (E.D. Pa. 1966). The nature of the relationship between any International and any district organization is such that some degree of control is inherent and is always retained by any International which charters a district organization. To determine in any given case whether the degree of control is sufficient to give rise to a jurisdictional basis, the character of the affairs subject to supervision or regulation by the International must be weighed against the character of the affairs left to the district organization's discretion.

The relationship which exists between a parent and a subsidiary corporation is analogous to the relationship of an International to its district organization. The identity of the officers and directors of a subsidiary and parent corporation is not sufficient to subject the non-resident parent corporation to jurisdiction in the state in which the subsidiary does business. Electrosonics International, Inc. v. Wurlitzer Co., 234 F. Supp. 913 (E.D.Pa.1964). So also, the identity of the officers of SIUNA and AGL&I, to the extent it exists, is not in and of itself sufficient to subject SIUNA to the jurisdiction of this Court by service upon AGL&I in the absence of a showing that AGL&I is otherwise related to or controlled by SIUNA.

In Kreshtool v. International Longshoremen's Association, AFL-CIO, 242 F.Supp. 551 (D.C.Del.1965), the case upon which plaintiffs principally rely, service was purportedly made upon the International in Delaware by service upon its Delaware Local. All initiation fees, dues, assessments and other monies paid to the Local and all books, records, property and assets in the possession of the Local, were the property of the International. All collective bargaining agreements were negotiated by and subject to the approval of the International. No strike could be ordered except by the International. The Delaware District Court in reaching its ultimate conclusion that service upon the Local was effective service upon the International held that "* * * [a]ny realistic evaluation of their relationship establishes that in truth and in fact the Locals are the instrumentalities by and through which the basic objectives of the International are carried out * * *". Kreshtool, supra, at 558.

An examination of the record in this case does not disclose either ownership by SIUNA of property in the possession of AGL&I or control by SIUNA of collective bargaining agreements binding upon AGL&I which we consider to be most significant in the Kreshtool case. Moreover, in Kreshtool the activities which were the genesis of that lawsuit were carried on by the International in Delaware through the intermediation of the Local. Whether service could have been made upon the International through the Local in an action based upon a wrong committed by an organization affiliated with the International and independent of the Local was not there at issue.[2]

■ The degree of control exercised by SIUNA over AGL&I is similar to the degree of control exercised by any International over its affiliates. Membership in SIUNA is automatic where one is a member of AGL&I. SIUNA assesses a

per capita tax against AGL&I and has the power to audit AGL&I's books of account to ascertain whether AGL&I is remitting the proper amount. However, when compared to AGL&I's power to elect its own officers, own its own property, negotiate its own collective bargaining agreements and otherwise operate independent of SIUNA, the control exercised by SIUNA over AGL&I is not sufficient to render SIUNA amenable to the jurisdiction of this Court by service of process upon AGL&I. Accordingly, SIUNA's motion to quash service of process will be granted.

---

2. The picketing activities complained of in this case were allegedly engaged in by SIUNA through IMWA, an organization separate and apart from AGL&I.