Ted BACINO, Plaintiff,

v.

AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA, et al., Defendants.

No. 75C0011WD.

United States District Court, N. D. Illinois, W. D.

Jan. 5, 1976.

---

Francis E. Hickey, Rockford, Ill., for plaintiff.

Marvin Gittler, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

The plaintiff, Ted Bacino, is a musical director. He filed the present action to recover damages resulting from conduct which is alleged to be an unfair labor practice. Morry Hill and the American Federation of Musicians (A.F.M. or International) have moved to dismiss the complaint against them for various jurisdictional reasons.

In his one count complaint, the plaintiff alleges that he is a resident of Rockford, Illinois, engaged in the occupation of directing musical stage productions or shows. Most recently he was under contract with Charles W. Hoenes, producer of Henrici's Summer Theatre in Rockford. For the past several years the plaintiff has also been the director of the Starlight Summer Theatre musical productions sponsored by Rock Valley College, a community college located in Winnebago County.

In September or October 1974, the plaintiff alleges that the defendants "maliciously, falsely, unreasonably and without just cause, placed Rock Valley College, Dr. Karl Jacobs, President of Rock Valley College, and plaintiff" on the National Unfair List of the A.F.M. because the college and the plaintiff refused to employ union musicians in the summer theatre productions. (Complaint ¶ XII.)

Beginning on or about February 1, 1975, the plaintiff alleges that the defendants, A.F.M., Rockford Musical Association Local 240 (RMA), and Morry Hill, through their agents, began a campaign of threats and harassment designed to threaten, coerce, or restrain Hoenes and Henrici's from doing business with the plaintiff.[1] More specifically, he alleges that on February 10, 1975, the defendants threatened to close the musical production being directed by the plaintiff at Henrici's unless Rock Valley College executed a collective bargaining agreement with the defendant unions, thereby allowing union musicians to play at the summer theatre. The threat was to be executed by having union musicians who worked for Henrici's refuse to play at any further performances until the college and the unions signed an agreement. At some point, the union apparently relaxed its position, telling Hoenes and Thomas Allen, Henrici's manager, that the production would be stopped beginning on February 21, 1975, unless either (a) Rock Valley executed a collective bargaining agreement, or (b) the plaintiff's services were terminated. On February 20, 1975 Hoenes terminated the plaintiff's employment.

The plaintiff contends that as a direct result of the defendants' threats and coercion, his services were terminated, and he suffered damages in the amount of $300,000.

Following the plaintiff's termination, he filed Unfair Labor Practice Charges with the National Labor Relations Board

---

1. The complaint does not disclose whether other than Morry Hill there were other individuals associated with the defendant unions participating in the alleged threats and coercion against Hoenes and Henrici's.

(N.L.R.B.) and instituted this lawsuit.[2] The charges before the N.L.R.B. are still pending.

The statutory basis of the plaintiff's complaint is that the defendants' conduct was an unfair labor practice as defined by Section 8(b)(4) of the National Labor Relations Act, 29 U.S.C. § 158(b)(4) (1970).

>   8(b) It shall be an unfair labor practice for a labor organization or its agents—

>   .    .    .    .    .

>   (4) . . . threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

>   .    .    .    .    .

>   (B) forcing or requiring any person to . . . cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representatives of his employees unless such labor organization has been certified as the representatives of such employees . . . ;

>   .    .    .    .    .

>   (D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class . . . .

Jurisdiction over the complaint is conferred by Section 303 of the Labor Management Relations Act, 29 U.S.C. § 187 (1970).

>   (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 8(b)(4) of the National Labor Relations Act, as amended.

>   (b) Whoever shall be injured in his business or property by reason of any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of Section 301 hereof without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

*Motion of Morry Hill for Summary Judgment*

The parties agree that Morry Hill is the Secretary-Treasurer of the RMA. The only question presented by the motion is whether the complaint states a cause of action under Section 303.[3]

■ The defendant argues that Section 303 prohibits a *labor organization* from engaging in any conduct or activity that is defined as an unfair labor practice, and therefore, no cause of action can be stated against an individual union member. This conclusion is supported by virtually all the authorities. *See, e. g., Universal Communications Corp. v. Burns*, 449 F.2d 691, 693 (5th Cir. 1971); *Meier S. Pohlman Furniture Co. v. Gibbons*, 233 F.2d 296, 306 (8th Cir.), *cert. denied*, 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80 (1956); *Garrison v. International Union of Operating Engineers*, 283 F.Supp. 771, 773 (S.D.N.Y.1968).[4]

---

**2.** The plaintiff may proceed in both forums simultaneously.

**3.** *See Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 247–248 & n.6, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

**4.** In addition to the language of Section 303, referring specifically to labor organization, the section also imposes the limitations of Section 301 upon Section 303 suits. Section 301(b) makes any money judgment obtained against a union enforceable only against the union as an entity and not against an individual member or his asserts. Thus some courts have held that the limitations of Section 301 prohibit individual lawsuits under Section 303. *See, e.g., Universal Communications Corp. v. Burns*, 449 F.2d 691, 693 (5th Cir. 1971).

■ The plaintiff argues that the motion should be denied because the proofs may show that the defendant was acting in his individual capacity and not as an agent of the union. In support of this position, he relies on *DuQuoin Packing Co. v. Amalgamated Meat Cutters*, 321 F.Supp. 1230 (E.D.Ill.), which held that individual members of a union could be held liable under Section 301 for breach of a no-strike clause if the evidence established that they had acted solely on their own behalf, and not at the request of their union.[5]

■ There are two answers to the plaintiff's argument. First, *DuQuoin* has, by implication, been overruled by *Sinclair Oil Corp. v. Oil, Chemical, & Atomic Workers*, 452 F.2d 49 (7th Cir. 1971), which reached the opposite conclusion. And second, the lawsuit arises not under Section 301, but under Section 303, which only makes unfair labor practices by labor organizations unlawful. An individual, unauthorized act, is not prohibited by Section 303.

Therefore, the conclusion reached is that the complaint does not state a cause of action against Morry Hill. An order will enter dismissing the action as to him.

### Motion of A.F.M. to Dismiss

The American Federation of Musicians has moved to dismiss the plaintiff's complaint against A.F.M. for insufficiency of process or, alternatively, for improper venue. Fed.R.Civ.P. 12(b)(3), (5). The plaintiff opposes the motions, arguing that the court has *in personam* jurisdiction and that venue is proper in this district and division.

The factual background of the jurisdictional dispute is not complex. The A.F.M. is a voluntary unincorporated labor association which is headquartered in New York City. It maintains no office or place of business in Illinois, and the Illinois Secretary of State is not authorized to accept service of process. The RMA is one of its chartered locals. Each defendant was served with a summons and a copy of the complaint by the United States Marshals Service. The returns show that the International was served at its New York City headquarters, while service on the Local was made on Morry Hill, the Local's Secretary-Treasurer.[6]

Based on these facts, the defendant argues alternatively that *in personam* jurisdiction is lacking or that venue in this district is improper. Labor Management Relations Act, § 301(c), 29 U.S.C. § 185(c)(1970). The gravamen of the arguments, however, is that the Local is an autonomous entity, and therefore, service on it did not constitute service on the International. For his part, the plaintiff argues that the Local is an agent of the International and service on the former is adequate to confer *in personam* jurisdiction over the latter. Neither party places any reliance on the New York service, and, therefore, the court will give it no further consideration.[7]

Before turning to the specific issue of agency, a review of the applicable statutes and rules regulating service of process in disputes of this nature is necessary. Section 303(b) provides that an individual who is injured in his business or property by an unfair labor practice may institute a damage suit in the district

---

5. In *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962), the Court held that union members could not be held liable in a Section 301 suit if the union was found liable.

6. The Local and Mr. Hill were served simultaneously.

7. The plaintiff's failure to assert the New York service as a basis for *in personam* jurisdiction

may be explained by the venue provision of Section 301. For if the plaintiff does not prevail on the question of agency, venue would appear to be proper only in New York, although the defendant may have sufficient contacts with this forum to permit the exercise of *in personam* jurisdiction providing adequate notice was given pursuant to the Illinois long arm statute. Ill.Rev.Stat. ch. 110, § 17 (1973).

courts subject to the limitations of Section 301. Section 301(d) provides:

> The service of summons . . . of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

This section must, however, be read in conjunction with service of process provisions of the Federal Rules of Civil Procedure. Rule 4 provides:

> (d) *Summons: Personal Service.* The summons and complaint shall be served together. . . . Service shall be made as follows:
>
> .   .   .   .   .
>
> (3) Upon [an] . . . unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized . . . by law to receive service of process
>
> .   .   .   .

■ Thus, when Section 301(d) is read in conjunction with Rule 4, it is clear that service of process in a Section 303 action may be made on the agent of a labor organization within the territorial limits of the state in which the district court is located. Since service was made on the Local, the only issue raised by the defendant's first motion is whether the Local is an agent of the International, which is determined by Section 301(e) of the Labor Management Relations Act, 29 U.S.C. § 185(e) (1970), and general common law principles of agency. *Wilson—Certified Foods, Inc. v. Amalgamated Meat Cutters & Butcher Workmen*, 70 CCH Lab. Cas. ¶ 13,557 (N.D.Ill.1972).[8]

■ Since the *Coronado Coal* cases, *Coronado Co. v. United Mine Workers*, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963 (1925), and *United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922), the law has recognized that affiliates of a national or international labor organization are not presumed by the mere fact of their affiliation to be agents of the latter. *T. S. Ragsdale v. International Brotherhood of Teamsters, Local 509*, 67 CCH Lab. Cas. ¶ 12,410 (D.S.C.1972); *Navios Corp. v. National Maritime Union of America*, 289 F.Supp. 197 (E.D.Penn.1969); *Isbrandtsen v. National Maritime Engineers' Benevolent Ass'n*, 9 F.R.D. 541 (S.D.N.Y.1949). Therefore, service of process on the affiliate does not constitute service on the national unless the party asserting the agency establishes that the affiliate does not have significant control over its own affairs. *See Rossi v. Trans-World Airways*, 350 F.Supp. 1274, 1280 (E.D.Penn.1972); *Dominguez v. National Airlines*, 42 F.R.D. 35 (S.D.N.Y.1966); *Dailey Review Corp. v. International Typographical Union*, 9 F.R.D. 295 (E.D.N.Y.1949). And this determination is made by examining the actual relationship between the national and the affiliate. *Morgan Drive-Away Inc. v. International Brotherhood of Teamsters*, 268 F.2d 871, 876 (7th Cir.), *cert. denied*, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959); *Kreshtool v. International Longshoremen's Ass'n*, 242 F.Supp. 551 (D.Del.1965).

The parties have referred to a number of decisions supporting their respective positions. These cases, however, all resolved the issue of agency by examining both the charters or constitutions of the respective bodies and the actual involvement of the national in the local's affairs. *See, e.g., Morgan Drive-Away, Inc. v. International Brotherhood of Teamsters, supra*; *International Brotherhood of Teamsters v. United States,*

---

**8.** Section 301(e) provides: "For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether specific acts performed were actually authorized or subsequently ratified shall not be controlling." Federal common law governs the substance of Section 301 suits. *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

275 F.2d 610 (4th Cir.), *cert. denied*, 362 U.S. 975, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960). See also, *T. S. Ragsdale v. International Brotherhood of Teamsters, Local 509, supra*; *Navios Corp. v. National Maritime Union, supra.* In the present case, however, the plaintiff has submitted only the constitution of the Local and offered no evidence of actual participation by the A.F.M. in the events which form the basis of the complaint.

Determining whether a local is an agent requires balancing the matters left to the control and discretion of the Local against those matters which remain under the control of the national. Obviously total separation is not required. But just as clearly, the Local must have a significant degree of autonomy in its management, finances, and business affairs, such as contract negotiation and work stoppages. *See N.L.R.B. v. David Buttrick Co.*, 361 F.2d 300, 306 (1st Cir. 1966); *Price v. International Brotherhood of Teamsters*, 46 F.R.D. 18, 21 (E.D. Penn.1969), *aff'd*, 457 F.2d 605 (3d Cir. 1972); *Axel-Newman Heating & Plumbing Co. v. Sheet Metal Workers International Ass'n*, 29 CCH Lab. Cas. ¶ 69,557 (D.Minn.1955).

■ A review of the Local's constitution and by-laws does not reveal an agency relationship with the International. The sections upon which the plaintiff relies to establish what he refers to as the "far reaching control" of the International over the Local are nothing more than the usual and customary provisions manifesting affiliation with a national labor union. For example, membership applications must be on forms prescribed by the International (Art. V, § 1), all contracts must conform to the laws and regulations of both the Local and the International (By-Laws Art. III, § 7), and the Local must elect delegates to the International's convention.

Balanced against these ties is what appears to be a large degree of autonomy for the Local in the conduct of its business affairs, finances, and internal operations. Contracts, for example, are apparently negotiated and approved by the

Local, although the form and some terms of the contract must comply with the International's laws and regulations, as well as the Local's own rules. Funds are raised by initiation fees, work dues and assessments. Investments are under the control of the Local's executive board, which is elected from the members of the Local. And on dissolution, the funds and assets of the union are distributed according to the will of the membership. Internally, the membership elects all its own officers as well as delegates to the annual convention of the A.F.M. And discipline of members is conducted at the local level, although appellate review to the International is available in some instances.

In summary, the plaintiff has not carried his burden of establishing the agency relationship by virtue of the Local's constitution and by-laws. *See Morgan Drive-Away, Inc. v. International Brotherhood of Teamsters, supra*; *Navios Corp. v. National Maritime Union of America, supra*; *Farnsworth S. Chanders Co. v. Sheet Metal Workers International Ass'n, Local 49*, 125 F.Supp. 830 (D.N.M.1954). Whether the result would be different if the International's constitution and by-laws had also been submitted cannot be answered.

■ The only remaining question on the issue of agency is whether there was any particular involvement of the International in the present dispute sufficient to warrant a finding of agency. There is no question that the defendant did list the plaintiff on its Unfair List in its journal, the "International Musician." And likewise, there is no question that Article 12, § 10 of the Local's by-laws prohibit members from performing for individuals on the International's or Local's Unfair List. For several reasons, however, those facts do not establish an agency relationship. First, there is no evidence that the International requires locals to prohibit their members from working for individuals on the list. And second, the dispute in this litigation is not over the legality of the Unfair List, but over the specific conduct of the

Local and one of its officers in dealing with an employer which was not on the list. There is no suggestion in the submitted evidence that the International in any way aided, participated, encouraged, condoned, ratified, or even knew of the Local's action. Hence, the conclusion reached is that the International did not so interject itself in the Local's dispute so as to make the Local its agent. *Compare Kreshtool v. International Longshoremen's Ass'n, supra; Wilson Certified Foods, Inc. v. Amalgamated Meat Cutters & Butcher Workmen, supra, with Navios Corp. v. National Maritime Union of America, supra.*

Since no service was made on the International, its motion to dismiss is granted. As a consequence, there is no need to rule on the alternative motion to dismiss for improper venue. An order will enter dismissing the plaintiff's action against the defendant, American Federation of Musicians of the United States and Canada.[9]

Pursuant to Rule 54(b), Fed.R.Civ.P., the court finds there is no reason to delay the entry of judgment and enforcement of or appeal therefrom and directs the clerk to enter judgment dismissing plaintiff's action as to defendants American Federation of Musicians of the United States and Canada and Morry Hill.

---

9. Ordinarily when a court grants a Rule 12(b)(5) motion, service is quashed, but the action is not dismissed. *See, e.g., Krulikowsky v. Metropolitan Dist. Council of Phila. & Vic.,* 30 F.R.D. 24 (E.D.Penn.1962). In this case, however, even if the court could acquire *in personam* jurisdiction, venue would appear inappropriate in this district under § 301(c) and the result reached here on the question of agency. Therefore, the wiser course is to dismiss the action.