Kenneth M. DONAHUE, Plaintiff,

v.

L. C. L. TRANSIT COMPANY, a Wisconsin Corporation; General Drivers, Dairy Employees & Helpers Local 579, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, a labor organization, and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, a labor organization, and Leonard Schoonover, Defendants.

No. 79–C–423.

United States District Court,
W. D. Wisconsin.

June 11, 1980.

Michael J. Collins, Wyngaard & Wilson, Madison, Wis., for plaintiff.

Thomas J. Duffey, Milwaukee, Wis., for LCL Transit.

Gerry M. Miller and Alan M. Levy, Goldberg, Previant & Uelmen, Milwaukee, Wis., for IBT.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The plaintiff, Kenneth M. Donahue, filed this action pursuant to Section 301(a) of the Labor Management Relations Act of 1947, 15 U.S.C. § 185(a) (1976). Plaintiff is a former employee of the defendant L.C.L. Transit Company (LCL), an interstate shipper of dairy products. Prior to his termination by LCL, the plaintiff was an over-the-road truck driver for LCL and a member of General Drivers, Dairy Employees & Helpers Local 579 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (Local 579), which is affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (IBT). Under the collective bargaining agreement between LCL and Local 579, which was in effect at the time of the plaintiff's discharge, Local 579 was the exclusive bargaining agent for the plaintiff and all other truck drivers employed by LCL at their Elkhorn, Wisconsin terminal.

On June 1, 1978, the plaintiff, while still in the employ of LCL, was one hour and fifteen minutes late making a delivery in Des Moines, Iowa. On June 2, 1978, LCL dispatched the plaintiff from Des Moines to Cedar Rapids, Iowa to pick up a load bound for Chicago. The load was to be delivered in Chicago at 7:00 A.M. on June 3, 1978. Plaintiff picked up the load in Cedar Rapids between 3:00 P.M. and 5:00 P.M. on June 2, 1978 and arrived in Chicago at approximately 3:00 A.M. on June 3, 1978. Because the consignee was closed at that time, the plaintiff checked into a motel room to get some rest. Before retiring, he made arrangements with the motel management for a wake-up call. During the night, however, he knocked his phone off the hook and consequently he overslept and was not able to deliver the load on time. When he woke up on June 3, 1978, the consignee had closed for the day. After notifying LCL of the

problem, he returned home with the load and made delivery on June 5, 1978 as ordered by LCL.

On June 13, 1978, the plaintiff received a notice of discharge in the mail dated June 12, 1978 from the defendant LCL. The notice stated that the plaintiff was being discharged because he was late making his delivery on June 1, 1978 and because he had failed to make delivery in Chicago on June 3, 1978. In addition, the notice indicated that on at least two earlier occasions, plaintiff had received warnings from LCL for delay of equipment and load. In March of 1978, the defendant LCL had actually discharged the plaintiff for a similar offense, but due to intervention of Local 579, his discharge was reduced to a warning which was still in effect at the time of the latest incident.

Within ten days of the discharge, the plaintiff filed an appeal with Local 579. On June 23, 1978, the parties met to try and resolve the dispute. Local 579 argued that the discharge was to serve as punishment for being late with a load. The defendant LCL refused to rescind the discharge.

On June 26, the defendant Local 579 filed a grievance form with the Wisconsin Joint City Road Steel and Special Committee (Committee) protesting the discharge.

On July 21, 1978, the Committee heard the grievance. The defendant LCL, represented by Richard Kiper, presented the Committee with its discharge notice. In support of the discharge, Mr. Kiper stated that the company had sent Mr. Donahue a letter of investigation on June 5, 1978, and that during that week they conducted a lengthy investigation of the logs, tach, charts, and other documents because plaintiff had indicated he "ran the dispatch different from the way he logged it." (Exhibit D attached to Brief in Support of Motion for Summary Judgment). As a result of its investigation, the company discharged the plaintiff.

At the hearing, Local 579 was represented by Warner Wathke. He read the plaintiff's grievance to the Committee and stated the local's belief that discharge was too severe. Two other union officials appeared on behalf of the plaintiff indicating that he was a good employee and that he should be reinstated with full seniority.

The plaintiff also appeared on his own behalf and related his story as to how he had overslept and that was why he did not make the delivery on time. Furthermore, he stated that he had a "full, complete, and fair hearing and that Local 579 representatives . . . had fairly and adequately represented him in these proceedings." *Id.*

Based on this evidence, the Committee ruled that discharge was proper. When informed of the ruling, the plaintiff inquired as to possible further appeals and was advised that the Committee's ruling was final and binding.

Plaintiff now asserts that the defendant LCL violated the terms of the collective bargaining agreement by terminating him without just cause and that the defendants, Local 579 and IBT, violated their duty of fair representation to the plaintiff because they failed to raise certain defenses to the discharge at the Committee hearing. The defendant LCL has filed a motion for summary judgment and the defendant IBT has moved for dismissal. Defendants Local 579 and Leonard Schoonover, business agent of Local 579, have joined in both motions.

Under the collective bargaining agreement between the defendant LCL and Local 579, LCL may only discharge an employee covered by the agreement for just cause. Prior to a discharge, the employee must receive a warning and a notice of investigation. If the employee believes he has been discharged without cause, he may, within ten days of the discharge, file an appeal with the local union. If the local union and employer are unable to reach a satisfactory solution within thirty days, the local union may appeal a dispute to a Joint State Steel & Special Commodity Committee. This Committee is set up in each area and serves as a final arbitrator for disputes between Unions and Employers covered under the collective bargaining agreement. It is composed of three representatives of em-

ployers and three representatives of unions. By agreement, their decisions are final and binding on the parties. (Exhibit A attached to Motion for Summary Judgment). In this instance, the Wisconsin Joint City, Road Steel and Special Commodity Committee was the Committee established to hear the plaintiff's dispute. Therefore, its decision should be binding on the parties.

In a series of cases handed down by the Supreme Court on June 20, 1960, the Supreme Court set out the manner in which courts should treat arbitration clauses and decisions in collective bargaining agreements. In *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the Court held that when the parties have agreed to submit all disputes as to contract interpretation to an arbitrator, the court's sole function is to determine whether the claim made is governed by the contract. If the claim is one of contract interpretation, then the claim must be made to the arbitrator, not the court. *Id.* at 567–68, 80 S.Ct. at 1346. In *United Steelworkers of America v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court held that a court's only duty in determining whether a person should be ordered to arbitrate a dispute is whether that person has agreed to arbitrate the dispute. If so, then an order compelling arbitration must be granted. Finally, in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Court made it clear that in all but the most unusual circumstances, the federal courts should not review the merits of an arbitration award. The Court held that a provision for the use of an arbitrator in a collective bargaining agreement is an essential element of the agreement. Furthermore, because the arbitrators have a unique knowledge of the customs and policies of the industry and collective bargaining agreements, the Court reasoned they are best suited to make decisions regarding contract interpretation. Therefore, the Court concluded a review of the arbitrator's decision would undermine the federal policy of settling labor disputes by arbitration.

While these cases indicate that great deference should be given to final awards of arbitrators, the Court has also indicated in more recent decisions that there are circumstances in which an arbitrator's award will not be upheld. Where a collective bargaining representative or agent has breached his duty of fair representation, an arbitrator's decision can be vacated and the issue can be relitigated. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). In *Humphrey, supra*, the Court held that the statutory law which gives unions the broad authority to collectively bargain and administer agreements also imposes the "responsibility and duty of fair representation." 375 U.S. at 342, 84 S.Ct. at 368. In *Vaca*, the Court held that it was a breach of a union's duty of fair representation to "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." 386 U.S. at 191, 87 S.Ct. at 917. After reviewing these decisions, the Court in *Hines v. Anchor Motor Freight, supra*, held that where an employee can show that the union breached its duty of fair representation and that there is reason to believe the breach effects the outcome of the arbitration, he is entitled to relitigate his discharge against the employer even though the employer was not involved in the breach of the union's duty of fair representation. 424 U.S. at 567, 96 S.Ct. at 1057.

■ Under the *Hines* standard, therefore, for the plaintiff to prevail against the defendants, he must demonstrate that the representation he received from Local 579 was not "within the range of acceptable performance by a collective-bargaining agent," *Id.* at 568, 96 S.Ct. at 1058; that there is a substantial reason to believe that the breach affected the arbitrator's decision, and that the discharge was without cause. Conversely, the defendants must prove that there is no factual dispute as to the nonexistence of one of those three pre-

requisites to be entitled to summary judgment.

The plaintiff alleges that Local 579 breached its duty of fair representation because it did not investigate and present a possible defense that he had to the wrongful discharge. Plaintiff's alleged defense is that the company and the local union had forced him and other drivers to exceed the number of allowable driving hours without a rest under the federal safety standards.

The Federal Motor Carrier Safety Regulations, 49 C.F.R. § 395.3(a) prohibits a driver from driving more than "10 hours following 8 consecutive hours off duty or drive for any period having been on duty 15 hours following 8 consecutive hours off duty . . ." The regulations also require that the driver maintain a daily log of the number of miles traveled, the hours driven, and other pertinent information. 49 C.F.R. § 395.08. If the driver or carrier fails to maintain a log or falsifies a log, the carrier and/or the driver are subject to a fine.

The plaintiff alleges that on June 2, 1980, when ordered to take the load from Cedar Rapids to Chicago, he was out of hours and so informed the LCL dispatcher. Nevertheless, plaintiff alleges the dispatcher ordered him to take the load. The plaintiff admits that he complied with the order and, therefore, it would appear he violated the regulations if he was, in fact, out of hours. The plaintiff's log book did not show him out of hours, but he contends he was forced to falsify it. Furthermore, he alleges that had he not been over-tired due to the excess of hours, he would not have overslept as he admittedly did. Therefore, he contends that his discharge was unjustified. In support of his allegation that he had to falsify his log, plaintiff cites an investigation report of LCL by the Department of Transportation in which numerous violations were discovered.

Defendants, in response to plaintiff's allegations, contend that Local 579's failure to raise this defense does not demonstrate a breach of the union's duty of fair representation. The defendants contend that there was good reason for the local not to pursue the defense. According to their brief, if Local 579 did pursue this defense, it would encourage other drivers to violate the regulations. Moreover, they believe that plaintiff's position was untenable because he could not be heard to complain when he had accepted the load in apparent violation of the regulations. Finally, they contend that the defense was not raised in the initial grievance filed by the plaintiff and that in any event, plaintiff had the right to raise it and did do so at the committee hearing.

 The duty of fair representation requires that the union do more than perfunctorily prosecute a member's grievance. "A good faith effort to plead a member's case is required." *Cannon v. Consolidated Freight-Ways Corp.*, 524 F.2d 290, 293 (7th Cir. 1975). The failure to raise a defense is not, however, a *per se* violation of the duty of fair representation. *Id.* at 294. In a very recent decision, the Seventh Circuit considered a case similar to the instant one. In *Miller v. Gateway Transportation Company, Inc.*, 616 F.2d 272 (7th Cir. 1980), plaintiff alleged he was wrongfully discharged and that his local union violated its duty of fair representation because it failed to investigate certain potential defenses to the discharge. In reversing the district court's granting of summary judgment for the defendant, the *Miller* court set out the relevant inquiry for determining if a union has breached its duty of fair representation. In footnote 12 of the opinion, the court stated:

As Professor Gorman has noted, the relevant inquiry is not "whether the union in fact pursues an employee's grievance," but rather "whether the union has made a full investigation, has given the grievant notice and an opportunity to participate, has mustered colorable arguments and has refuted insubstantial arguments by the employer." R. Gorman, *supra* note 11, at 718. Absent such action by the union, the arbitration process could become little more than a sham, and the rationale behold deference to the decisions of arbitration panels could be entirely undercut. "[A]dministration and

grievance adjustment are performed by the union at a much lower 'level of visibility' and generality than contract negotiation, and are thus more readily subject to 'manipulation' by a willful union and more readily garbed with appearances of good faith or mere carelessness . . ." *Id.* at 719. *See also Vaca v. Sipes, supra,* 386 U.S. at 182, 87 S.Ct. 903; *Holodnak v. Avco Corp.,* 381 F.Supp. 191, 199–201 (D.Conn.1974), *modified on other grounds,* 514 F.2d 285 (2d Cir. 1975).

We note also that the duty of fair representation is of special importance when a grievance for wrongful discharge is involved. As the Fourth Circuit said, "A Union must especially avoid capricious and arbitrary behavior in the handling of a grievance based on a discharge—the industrial equivalent of capital punishment." *Griffin v. UAW,* 469 F.2d 181, 183 (4th Cir. 1972). At 277.

Based on this standard, the *Miller* court held that summary judgment was not appropriate because there was no evidence that the union had investigated the employee's potential defense and because the only thing the union did before the Committee was to read the employee's grievance complaint.

■ In this case, the Court, applying the *Miller* standard, must conclude that summary judgment is not appropriate at this time. Like the union in *Miller, supra,* Local 579 has not demonstrated that it investigated the plaintiff's potential defense or that it, in fact, made any reasoned decision not to raise that defense or any others. Defendants have submitted no affidavit to that effect and, therefore, there remains a material issue of fact as to whether the union only perfunctorily represented the plaintiff. To prevail on a motion for summary judgment, the defendants would have to show the steps taken by Local 579 to investigate the defenses alleged; that they considered the defenses and made a good faith decision not to pursue it; and that they investigated other possible defenses. It may well be that as Judge Pell said in his concurring opinion in *Miller* that "[T]o the extent that the union's representation may appear pro

forma, it may well be attributable to the lack of merit of Miller's position." 616 F.2d at 278.

■ In addition, there are other issues that will have to be decided at trial. The Court notes that plaintiff has not contested his tardiness on June 1, 1978 and, therefore, a question arises as to whether that alone, in view of his previous warnings and poor records, would justify his removal. If so, then the events of the subsequent day would be of no consequence. At this time, however, the Court cannot make that determination. For the foregoing reasons, therefore, the Court finds defendants' motion for summary judgment must be and is hereby denied.

■ IBT has also filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the plaintiff fails to state a cause of action against it because Local 579 is not an agent of IBT. Although defendant has cited numerous cases where the IBT and other Internationals have been held not to be in an agency relation with their locals, all of these decisions have come as a result of findings of fact by the trier of fact. *See Barefoot v. International Brotherhood of Teamsters,* 424 F.2d 1001 (10th Cir. 1970); *Morgan Driveaway, Inc. v. International Brotherhood of Teamsters,* 268 F.2d 871 (7th Cir. 1959); *Bacino v. American Federation of Musicians,* 407 F.Supp. 548 (N.D.Ill. 1976). Recognizing this, the defendant has argued that the plaintiff should be required to plead agency with particularity because a general allegation of agency forces IBT to defend an action in a far-off forum.

The defendant's argument is not persuasive enough for the Court to adopt such a requirement in light of the liberal notice pleadings of the Federal Rules of Civil Procedure. Had the framers of these rules intended that agency be pled with particularity, they had the means to require it as they did with fraud. F.R.Civ.P. 9. Because the framers of the rule did not do so, and because there is no compelling reason for this Court to do so now, the Court finds

that the plaintiff is entitled to proceed on his claim as stated and must be given the opportunity to prove the existence of agency. Therefore, the defendant's motion to dismiss must be and is hereby denied.

In summary, the defendants' motions for summary judgment and dismissal must be and are hereby denied. A status conference in this case is scheduled for *9:45 A.M., Friday, July 25, 1980.*