**Mabel Maria HASH, Appellant,**

**v.**

**Mark H. HOGAN and Francis L. Bennie, Appellees.**

**No. 930.**

Supreme Court of Alaska.
April 25, 1969.

Chancy Croft, of Croft & Bailey, Anchorage, for appellant.

Karl L. Walter, City Atty., Anchorage, for appellees.

RABINOWITZ, Justice.

On the morning of May 19, 1965, appellant was working in the garden of her

home which was located at Mountain View in Anchorage. While appellant was so engaged, appellees drove up, parked and entered a gate which led on to appellant's premises. At this point appellee Hogan stated that they were looking for a Mrs. Hash and asked if this was where she lived. Appellant answered in the affirmative and appellee Hogan then informed her that they had come to talk to her about her son.[1]

Appellees were investigating officers with the Anchorage Police Department and at the time these events transpired were investigating the possible connection of one one of appellant's sons with a burglary offense. Although none of the parties had met prior to the morning of May 19, the record establishes that appellant knew appellees were law enforcement officers by virtue of certain markings which were visible on the side of appellees' vehicle.

After answering a few questions which were asked by Officer Hogan, appellant became "tired of being pestered" and, when Officer Hogan "sarcastically" asked if she had been having trouble with her son lately, appellant ordered appellees off her property. The testimony is in dispute as to whether Officer Hogan was sarcastic and the circumstances and timing of appellant's ordering appellees to leave. Also in sharp conflict is the testimony concerning the events which transpired immediately following appellant's request to the officers that they leave her property.

According to appellant's version, after she told the officers to get off her property, Officer Hogan said, "You can't tell me that" and placed her under arrest. Appellant further testified that Officer Hogan grabbed her wrists and then twisted both

of her arms behind her back; that she started kicking and Officer Bennie then grabbed both of her legs; that at this point she grabbed Officer Hogan's wrist watch and threw it against the ground; that the officers then held her down on the ground and rubbed her face in the dirt while "somebody was stepping" on her back and pulling her hair; that she was then handcuffed and dragged to appellees' car; and that on the way to the police station Officer Hogan pulled her hair and both officers twisted her arm.[2]

According to Officer Hogan's version, the following events took place.[3] After they had passed through the gate, he initially asked appellant about her son and then started to make a comment in regard to appellant's son. At this point appellant ordered the officers to leave. Officer Hogan further testified that they started to leave but before either Officer Bennie or he reached the gate, appellant started screaming. Officer Hogan then "turned on Mrs. Hash and advised her to stop screaming, otherwise [he] * * * would place her under arrest for breach of peace." Since appellant continued her screaming, appellee Hogan placed her under arrest. According to Officer Hogan, appellant attempted to prevent her arrest by kicking and scratching him, and during the course of the scuffle broke his wrist watch. Officer Hogan admits that he then placed appellant face down on the ground, positioned his knee in the small of her back and handcuffed appellant with the assistance of Officer Bennie.[4]

Appellant thereafter instituted an action for false arrest, false imprisonment, and assault and battery. In her complaint ap-

---

1. There is a dispute in the evidence as to which son Officer Hogan made reference to at that time.

2. According to appellant's testimony, everyone "twisted her arm" on the way to jail "and the jailer jumped up and he twisted my arm, one arm."

3. Appellee Bennie did not testify at the second trial which was held in this matter.

4. On cross-examination it was brought out that at the time in question Officer Hogan weighed approximately 210 pounds and was 6 foot 1 inches tall; that Officer Bennie weighed 225 pounds and was 6 foot 2; and that appellant weighed approximately 130 pounds and was approximately 5 feet 2 inches tall.

pellant sought both compensatory and punitive damages. After trial by jury in the superior court, verdicts were returned in appellant's favor against appellees, jointly and severally, in the amount of $800 compensatory damages and $5,000 punitive damages. Appellees then moved for a judgment n. o. v., remittitur, or new trial. The superior court denied the motion for judgment n. o. v. but granted a remittitur as to the $5,000 award of punitive damages.[5] In granting a remittitur the trial judge stated in part:

> I'm satisfied in my own mind here that on the basis of the verdict rendered for punitive damages, that the jury was acting under either some emotion, some passion, some prejudice, some unlawful motive in bringing in the verdict as they brought. I'm of the opinion that Five Thousand Dollars ($5,000.00) damages on the basis of what we have here is absolutely and completely unjustified, so much so as to shock the conscience of the Court as is so often said in these cases.

Later in the course of his oral decision, the trial court said:

> I have found already and I adhere to it, that there is adequate evidence that should have gone to the jury on the question of punitive damages. On the other hand * * * the plaintiff herself caused whatever was done. She certainly had no cause to scream all over the neighborhood, if she did. She certainly had no cause to scratch or bite the offi-cers or kick them on the shins, even though she thought she was being unlawfully arrested. She certainly had no right to reach over rip off the officer's watch and throw it on the ground. * * * But taking everything into consideration, a good deal of what happened to Mrs. Hash was brought on by her own actions. * * * I don't excuse them [appellees] for treating this woman the way that they did. But under all the circumstances existing, I'm of the opinion that Five Hundred Dollars ($500.00) punitive damages is adequate, and anything more than that is excessive.[6]

Appellant refused to accede to a remittitur and a second jury trial, limited solely to the issue of punitive damages, was held.[7] At the conclusion of this second trial the jury returned a verdict in appellees' favor on the punitive damages issue. This appeal followed.

The principal ground urged for review in this appeal by counsel for appellant in his brief and at oral argument relates to the trial court's grant of a remittitur, or in the alternative a new trial limited to the question of punitive damages.

In Ahlstrom v. Cummings[8] we said in regard to civil cases that:

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.[9]

---

5. In part, the superior court's order reads: [T]hat award of punitive damages awarded * * * is hereby remitted to the amount of $500.00. If plaintiff refuses to accept this remittitur to the amount of $500.00, a new trial is hereby ordered in the above captioned action.

6. The superior court's formal order embodied the substance of its oral opinion. In its order the court concluded that the $5,000 award for punitive damages was "excessive" and "shocks the conscience"; that appellant caused much of the conduct of which she now complains; and that the "high award of punitive damages indicates to this court that the jury was acting under the influence of passion, prejudice or bias."

7. Civ.R. 59(a) provides in part that: A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, if required in the interest of justice.

8. 388 P.2d 261, 262 (Alaska 1964) (footnote omitted).

9. In concluding that no circumstances existed which would require this court's intervention, we said, by way of dictum at 263 in *Ahlstrom* that, "As to the verdict, there is nothing to indicate that the jury was ruled by passion or prejudice."

*Ahlstrom* has been consistently adhered to in our subsequent decisions.[10] Further elaboration of the *Ahlstrom* decision followed in National Bank of Alaska v. Mc-Hugh [11] where it was said:

We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. *In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in response to appellant's motion.* (Emphasis added.)

■■■ On the basis of our study of the whole record pertaining to the first trial, we are not left with a definite and firm conviction that the superior court erred in ordering a remittitur, or alternatively a new trial. Unlike motions for directed verdicts or for judgments n. o. v., which raise questions as to the legal sufficiency of the evidence, motions for remittitur or new trial

on the grounds that the verdict is excessive are addressed to the sound discretion of the trial court.[12] In regard to the discretion possessed by a trial court in setting aside an excessive verdict, Professor Moore writes:

Some courts require the verdict to be the result of passion, bias, or prejudice before it will be set aside as excessive; other courts will not set the verdict aside as excessive if it is supported by 'substantial' evidence; while probably most courts will uphold the verdict unless it is 'grossly excessive' or 'shocks the court's conscience.' Some trial judges may, however, go further and set aside the verdict in less extenuated circumstances. As stated in dealing with motions for new trial based on the ground that the verdict is against the weight of the evidence, the trial judge should exercise a mature, judicial discretion in viewing the verdict in the light of the whole setting of the trial, the character of the evidence, and the complexity or simplicity of the legal and factual issues; and his discretion should be exercised to nullify a seriously erroneous result and to prevent a miscarriage of justice.[13]

10. West v. Administratrix of Estate of Nershak, 440 P.2d 119, 121 (Alaska 1968); Otis Elevator Co. v. McLaney, 406 P.2d 7, 10 (Alaska 1965); Alaska State Housing Authority v. Vincent, 396 P.2d 531, 535 (Alaska 1964); and Montgomery Ward v. Thomas, 394 P.2d 774 (Alaska 1964) (footnote omitted), where it was said, "At the outset it should be understood that the policy of this court as stated in Ahlstrom v. Cummings is that the granting or refusal of a request for a new trial rests in the sound discretion of the trial judge."

11. 416 P.2d 239, 244 (Alaska 1966).

12. *See* Bolden v. City of Kodiak, 439 P.2d 796, 800 (Alaska 1968); Mallonee v. Finch, 413 P.2d 159, 162 (Alaska 1966).

13. 6A J. Moore, Federal Practice ¶ 59.-05 [3], at 3742–3743 (2d ed. 1966) (footnotes omitted). Professor Moore also states at 3743 (footnotes omitted):
In setting aside the verdict the trial court in its discretion may unconditonally grant a new tral as to all

the issues; or it may grant unconditionally a partial new trial limited to the issue of damages, when it is satisfied that the issue of liability has been properly determined. However, as we have seen, the court may exercise its discretion to condition the new trial order upon failure by the plaintiff to remit a stated amount which the court deems excessive. Most courts have not articulated any definite standard by which to determine the amount of the remittitur.
In ¶ 59.08 [6], at 3824, Professor Moore says in regard to the trial court's deciding motions for a new trial on the ground that the verdict is inadequate or excessive:
[T]he court should avoid substituting its judgment for that of the jury. But, nevertheless, the exercise of discretion will necessarily vary for some trial courts will indulge the jury's verdict unless it is such that it shocks the conscience or is grossly excessive or inadequate, while others are more disposed to grant relief in less extenuated circumstances.

Although our study of the record of the first trial has led us to the conclusion that the trial court did not abuse its discretion in ordering a remittitur or new trial, we considered it necessary to discuss a facet of this issue which has not been raised by the parties. We have previously mentioned that in both his oral opinion and subsequent order granting the remittitur or new trial, the trial judge gave as a partial basis for his ruling that the jury must have been governed by some "emotion," "passion," "prejudice," or "unlawful motive." Additionally, there is language in both the court's formal order and oral opinion indicating that the remittitur was ordered because the award of $5,000 punitive damages was "absolutely and completely unjustified" so much so that the award "shock[ed] the conscience of the court."[14]

In regard to the use of remittiturs, it is established that "they are not proper where the verdict was the result of passion and prejudice, since such prejudice may have infected all the decisions of the jury."[15] Assuming that the trial court in fact granted a remittitur on the sole ground of "passion" or "prejudice," it is not apparent how appellant was prejudiced by the trial court's nonadherence to this limitation on the use of remittiturs. Here the first trial jury's resolutions of the substantive issues pertaining to assault and battery, false arrest, and compensatory damages in ap-

pellant's favor remained intact. All that was ordered retried upon refusal of the remittitur was the question of punitive damages. We hold the superior court's grant of a remittitur did not prejudicially affect any rights of appellant under the facts of this record.

Before reaching appellant's contentions which relate to the issue of insurance, we will discuss appellant's other specifications of error. Appellant contends that the trial court erred in giving the following instruction:

As I instructed you when you were being selected, this is a retrial. The verdict of the previous jury stands as full and fair compensation to the plaintiff. The issue of compensation to the plaintiff is not to be considered by you. I set aside the verdict of the other jury as a matter of law, insofar as it pertains to punitive damages only. I granted a new trial on the issue of punitive damages only. This is that retrial. Accordingly, you are to consider only the question as to whether, under all the facts and circumstances as revealed by the evidence in this case, and under these instructions, punitive or punishment damages are to be awarded against the defendants. If you decide that such damages are to be imposed, then you are to determine the amount of such damages.[16]

14. As have been previously referred to, the trial court did hold that there was an evidentiary basis for the submission of the punitive damage issue to the jury; that an award of $500 was adequate; and that appellant's own conduct precipitated most of the officers' conduct.

15. Minneapolis, St. P. & S. Ste. M. Ry. v. Moquin, 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243 (1931); Ford Motor Co. v. Mahone, 205 F.2d 267 (4th Cir. 1953); Brabham v. Mississippi, 96 F.2d 210 (5th Cir. 1938); 3 W. Barron & A. Holtzoff, Federal Practice and Procedure, § 1305.1, at 375 (1958).
See 6A J. Moore, Federal Practice ¶ 59.05 [3], at 3746 (2d ed. 1966) (footnotes omitted), where the author stated:
If the verdict is the result of passion or prejudice, or for any other reason it appears that the jury erred or abused

its discretion not only on the issue of damages, but also on the issue of liability, the trial court *must* unconditionally order a new trial and cannot give the plaintiff the option to accept a lesser amount.

16. The record shows that at the inception of the impaneling of the jury the trial judge informed the prospective panel, without objection by appellant, that:
This case has been tried once, and resulted in a verdict for the plaintiff. As a matter of law I set aside the judgment insofar as punitive damages were concerned and directed that we have a new trial on that issue only, and that's what we're trying today with a six man jury is the issue of punitive damages.

■ Here appellant argues that the instruction was erroneous because "it states that the previous verdict for punitive damages was set aside since none should have been granted." Appellant further argues that this instruction was in conflict with a prior portion of the court's charge where it was stated, "Neither by these instructions nor by any ruling or remark which I have made do I or have I meant to indicate any opinion as to the facts." We find no merit in appellant's contentions. We do not read the questioned instruction as appellant would have us. A fair reading of the text does not disclose that the trial court informed the jury that it did not believe that an award for punitive damages was warranted. It follows that we can discern no comment on the evidence by the trial court in this portion of its charge. This instruction, when read in connection with the other instructions given the jury, properly informed the jury that only the issue of punitive damages was being submitted for decision.

■ Appellant next asserts that the giving of the following instruction was reversible error:

If, and only if, you find from a preponderance of the evidence that the defendants have been guilty of oppression, or actual malice, then you may, in your sole discretion, award damages against the defendants in the nature of punitive or exemplary damages, for sake of example and by way of punishment of the defendants.

The remainder of this instruction set forth the substantive law determining when a jury may award punitive damages. Appellant's entire argument here consists of the bald statement that "Use of both [If, and only if] again amounts to an improper comment on the weight of the evidence." We hold that the court's use of the introductory language "If, and only if" is not tantamount to a comment upon the evidence nor did it unduly emphasize the fact

that the jurors were free to award no punitive damages.

Appellant also argues that the court erred in giving the following instruction which related to the element of appellees' good faith. In this instruction the trial court told the jury that:

The intention and the motive with which the act was done are material in determining whether punitive damages are to be imposed. Punitive damages should not be imposed if you find that the defendants acted in good faith under an erroneous sense of duty or right, without any intention to oppress or without any actual oppression. Punitive damages may not be imposed if you find there was reasonable excuse for the actions of the defendants arising from provocation or fault by the plaintiff, unless you further find that defendants acted from a motive of malice as herein otherwise instructed.

In arguing that the "good faith" portions of this instruction were erroneous, appellant cites our decision in Bridges v. Alaska Housing Authority [17] where we said:

Punitive or exemplary damages are those awarded in excess of actual loss where the wrongdoer's conduct can be characterized as outrageous, such as acts done with malice or bad motives or a reckless indifference to the interests of another.[18]

■ On the basis of *Bridges,* appellant takes the position that "Good faith would be no defense to a reckless indifference of the rights of others. * * *" Appellant further argues that the instruction on good faith was deficient in that it failed to require the jury to find that the "good faith" actions of appellees were "supported by reasonable belief." Reading the instruction as a whole, together with the preceding instruction which defined the substantive basis for an award of punitive damages, we cannot find that the court's instruction pertaining to the element of good faith was er-

17. 375 P.2d 696, 702 (Alaska 1962) (footnote omitted).

18. *See also* Nissen v. Hobbs, 417 P.2d 250, 251 (Alaska 1966).

roneous. In the context in which the phrase was used and in light of the facts appearing in the record, we are of the opinion that the term "good faith" was antithetical to, and excluded a state of mind which evidenced a reckless indifference to the rights of others.[19] In our opinion the phrase "good faith" in the context employed in the court's charge implied a standard of care which negated the possibility of a "reckless indifference to the rights of others."[20] Compare Heinze v. Murphy[21] where the court said in part:

> The generally accepted rule in reference to punitive damages, when an officer, such as a policeman is involved, is that 'An officer who acts in good faith in making an arrest is absolved from punitive or exemplary damages, even though he is liable for compensatory damages. However, such damages may be allowed against an officer under circumstances upon which bad faith or malice may be attributed to him in making the arrest.'

Appellant next asserts as error the trial court's refusal to give three separate instructions which were requested by appellant. We find no merit in these three separate specifications of error and hold that the trial court did not commit any error in refusing to give these requested instructions. In part, appellant's requested instruction number one read:

> You are further instructed that it was the duty of these defendants to leave the premises of the plaintiff after they were ordered to do so unless a crime had been committed by the plaintiff prior to their leaving.[22]

Appellant has not shown the relevancy of this requested instruction, or why the substantive law of trespass was applicable when the sole issue before the jury on the second trial was whether or not punitive damages should be awarded against appellees. The factual basis for the award of punitive damages, if any, is found in the excessive force used to effectuate the arrest. The failure of appellees to leave appellant's property could not, of itself, afford the basis for an award of punitive damages.[23] Appellant further argues that it was error on the trial court's part to refuse

19. In Webster's New International Dictionary at 978 (3d ed. 1967), "good faith" is defined as "a state of mind indicating honesty and lawfulness of purpose * * * a belief that one's conduct is not unconscionable." In People v. Bowman, 156 Cal.App.2d 784, 320 P.2d 70, 76–77 (1958), the court said:
> Phrase 'good faith' in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and generally speaking, means being faithful to one's duty or obligation.

See Doyle v. Gordon, 158 N.Y.S.2d 248, 259–260 (Sup.1954).

20. Jones v. Southern Surety Co., 210 Iowa 61, 230 N.W. 381 (1930).

21. 180 Md. 423, 24 A.2d 917, 920 (1942).

22. In an instruction which was given, the jurors were told that:
> It is the duty of a police officer to investigate crime. Mark Hogan and Frank Bennie had the right to come upon the property of Mrs. Hash to seek information about a burglary in which her son was suspected of being involved.

23. At one point in the record the trial court refused this requested instruction because it did not permit the officers a reasonable time to leave the premises. In Pepsi Cola Bottling Co. v. Superior Burner Serv. Co., 427 P.2d 833, 837 (Alaska 1967) (footnote omitted), we said in part:
> It is established that if the requested instruction is defective, the court is under no duty to give it or to supply a correct instruction.

In the same case we also said (footnote omitted):
> Numerous authorities have concluded that if the defective, or erroneous, requested instruction directs the court's attention to an issue which the jury has not been instructed upon but which is necessary to enable the jury to intelligently determine the case, 'the court's error in failing to charge may not be excused by technical defects in a request to charge.'

In our view the substance of appellant's proposed instruction was not necessary to enable the jury to intelligently determine the punitive damage issue.

to give her proposed instruction number two:

> The son of the plaintiff was never charged with or convicted of the crime the defendants were alleged to be investigating. As a matter of law the defendants would not have been justified in arresting the son of the plaintiff without a warrant.

▮ Appellant advances a one-line argument in support of her assertion of error here.[24] We can discern no basis for the relevancy of this requested instruction, and therefore affirm the trial court's refusal to give this instruction. Our disposition of appellant's requested instruction number one is controlling as to appellant's assertion of error regarding the trial court's refusal to give her requested instruction number three. For in this instruction appellant merely elaborates on the trespass aspects of her first proposed instruction. Since the issue at the second trial exclusively concerned punitive damages, the trial court was correct in refusing this instruction.

▮ Appellant also urges that the following instruction was erroneous:

> If you find that punitive damages should be imposed, then in assessing such damages you are to consider the nature, the extent, and the enormity of the wrong committed. You are also to consider the intent of the parties committing the act and generally all the circumstances attending the particular transaction involved. You may take into consideration the financial and social condition and standing of the defendants. *You may take into consideration the fact that the plaintfff has heretofore been awarded the sum of $800.00 as compensatory damages against the defendants, and as to whether such award in fact is adequate punishment of the defendants. If you find that the compensatory damages awarded are not sufficient for the purpose of punishment of the defendants, then in arriving at the amount of punitive damages that amount should only be in such sum as when taken together with the compensatory damages will be sufficient for punishment of the defendants.* (Emphasis added.)

Appellant's position is that this instruction was erroneous because there was "no evidence suggesting that the Appellees would have to pay the compensatory judgment."[25] Appellant further argues that "[s]ince the second jury did not know for what items the Appellant was being compensated, it should not have been allowed to speculate whether or not the award was sufficient punishment to the Appellee." Closely connected with these assertions of error is appellant's further contention that the superior court erred when it refused to admit into evidence a policy of insurance which had been issued to the city of Anchorage. Appellant contends that this policy protected appellees against a punitive damages verdict and should have been admitted into evidence in light of the trial court's prior ruling that the financial condition of appellees could be shown since punitive damages were being sought.[26] Although sev-

24. This "argument" reads in full: "This instruction, too, would have helped to prevent the misconception by the jury of Appellant's rights and Appellees' duties."

25. At one point in the trial, out of the presence of the jury, the trial judge stated that he assumed the insurance company would pay the compensatory damages and the attorney's fees which were awarded as part of the judgment. Appellant argues that for the trial court to have instructed the "jury to consider as punish-

ment compensatory damages which the trial judge knew would not be paid by the Appellees amounts to a deceit of the jury invalidating its verdict."

26. Appellant also advances the contention that the form of verdict was erroneous in that it did not permit apportionment of punitive damages against each appellee. Since the jury's verdict was in favor of appellees, we can perceive no prejudicial error here.

eral complex and highly debatable questions are potentially involved in these last assertions of error, we do not find it necessary to reach them because of the manner in which the questions have been briefed and argued in this appeal.[27] Under the circumstances we hold that error has not been shown in relation to the trial court's refusal to admit into evidence the insurance policy in question, nor are we persuaded that the court's instruction pertaining to consideration of the previous award of $800 compensatory damages was erroneous. As to the insurance policy, appellant has failed to show that it in fact insured appellees against any recovery for punitive damages.[28] Nor have any policy reasons, or persuasive precedent, been advanced in behalf of the admissibility of this document. We are therefore disinclined to hold that the trial court erred in refusing to admit the policy into evidence.

As to the court's instruction pertaining to consideration of the first jury's award of $800 compensatory damages, we hold that it was not erroneous. In this instruction, the jury was told that they could consider the financial condition of appellees in assessing punitive damages. The jury was specifically informed that they could consider whether this $800 compensatory damage award was in fact adequate punishment of appellees.[29] Since evidence of the financial condition of appellees had been previously ruled admissible and was before the jury, this instruction does not appear to be erroneous. This is particularly so in light of our holding that in this record the trial court did not err in ruling against the admissibility of the insurance policy.

The judgment entered below is affirmed.

27. Not argued or briefed in this appeal are the following questions: Can the wealth and ability to pay of a person sued for punitive damages be shown? If such evidence is admissible, should evidence of the presence, or absence, of insurance coverage for either compensatory or punitive damages be admissible? As a matter of policy, should insurance coverage be permitted for punitive damages? Should apportionment of punitive damages be required in the circumstances of joint tort-feasors?

28. Nor has it been established whether this policy was a liability or indemnity policy, or whether the insurer had any rights of subrogation against appellees, or whether under the policy the city of Anchorage would have a claim against appellees. Nor argued is the further question of whether construction of the policy could be had without making the insurer a formal party.

29. On appeal appellant advances the argument that the second jury was not advised as to what elements of damage comprised the $800 award of compensatory damages on the first jury's part. We note that this objection was not made at the time appellant objected to this instruction. This ground alone would furnish a sufficient basis for disposing of appellant's contention. Additionally, the record discloses that at the first trial the court instructed the jury as to compensatory damages in the following manner:

If, adhering to the court's instruction, you should find that plaintiff is entitled to a verdict against defendants, it will be your duty to award plaintiff such amount of damages as will compensate her reasonably for all detriment suffered by her which was proximately caused by the action of defendants.

The foregoing comprises the only instruction the first jury received concerning the topic of compensatory damages. In view of this instruction, we find no prejudicial error in the instruction which is questioned in this appeal.