INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, LOCAL 959, State of
Alaska, Appellant,

v.

Edwin W. KING d/b/a King Trucking
Company, Appellee.

Edwin W. KING d/b/a King Trucking
Company, Cross-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN, AND HELPERS OF
AMERICA and International Brother-
hood of Teamsters, Local 959, State of
Alaska, Cross-Appellees.

Nos. 2991, 2992.

Supreme Court of Alaska.

Dec. 2, 1977.

B. Gil Johnson, James S. Crane, Johnson, Christenson, Shamberg & Link, Anchorage, for appellant and cross-appellees.

William G. Azar, C. R. Kennelly, Kennelly, Azar & Edwards, Anchorage, for appellee and cross-appellant.

Before BOOCHEVER, C. J., RABINOWITZ and CONNOR, JJ., and MOODY and HANSON, Superior Court Judges.

## OPINION

BOOCHEVER, Chief Justice.

This is an action by a trucking company against Teamsters Union Local 959 brought in the wake of a wildcat strike over unsafe working conditions. The plaintiff, Edwin W. King, d/b/a King Trucking Company, alleged breach of contract, tortious interference with prospective economic advantage, tortious property damage and intentional interference with contractual relationships.[1] A jury returned a verdict in favor of plaintiff King (hereinafter sometimes referred to as "the employer") for $214,000.00 actual damages and $138,000.00 punitive damages. The award of actual damages was remitted to $30,000.00. The punitive damage award was not remitted, and the total judgment, including interest and costs, was $197,340.32.[2]

An appeal and cross-appeal bring four distinct issues before the court. Teamsters Local 959 argues that: (1) under the union-employer contract, the dispute should have been submitted to arbitration and (2) punitive damages should not have been awarded. King cross-appealed, arguing: (3) the trial court erred in quashing service of summons on the International Brotherhood of Teamsters as a second defendant and (4) the trial court should not have reduced the actual damage award by remittitur.[3]

After hearing and argument, we ordered supplemental briefs on the issue of whether the right to arbitrate had been waived.[4]

We have concluded that: (1) the dispute was subject to arbitration, (2) the union waived its right to arbitration, (3) punitive damages should not have been awarded, (4)

---

1. At the conclusion of the evidence, motions to dismiss all four counts for want of proof were denied. But the judge only instructed the jury on the breach of contract count. His instructions listed three elements of consequential damages which the jury might find: money lost due to job delays, damage to equipment and damage to reputation and business opportunities. These three items parallel the three tort causes of action in the complaint: interference with the King-Lundgren contract, property damage and interference with prospective advantage.

2. Trial was in the Third District, Anchorage, with Judge James R. Blair of the Fourth District sitting by designation.

3. The remittitur was granted in response to the Teamsters Local 959 motion for a new trial. Teamsters Local 959, as cross-appellee, responds to this point on appeal by urging that (in order of its preference) a complete new trial should be granted, a new trial on the question of damages should be granted or the trial judge's remittitur should be upheld.

4. The order dated April 28, 1977 required simultaneous briefing on the following issues:
 1. Is the right to arbitrate an affirmative defense which must be pleaded under Civil Rule 8(c)?
 2. Was the right to arbitrate pleaded as an affirmative defense, and, if not, [what was] the effect of the failure to plead such an affirmative defense?
 3. Was arbitration waived by the failure to raise the issue until three years after the case was filed?

the trial court did not err in quashing service of summons on the International Brotherhood of Teamsters and (5) the trial court did not err in reducing the actual damage award by remittitur.

There is very little factual dispute. King, whose relations with the Teamsters Union had not been good for a number of years, was the trucking subcontractor on a highway construction project near Tonsina, in the Copper River Basin, in the summer of 1971. The general contractor was Lundgren Pacific Construction Co. King had signed a "compliance agreement" with Teamsters Local 959, agreeing to adhere to the master labor agreement between the Associated General Contractors and the local. The compliance agreement contained a no-strike clause and referred specifically to the mandatory grievance arbitration clauses in Article VI of the master agreement.

On June 14, 1971, Chris Katsekures, a business agent for Teamsters Local 959, came to the job site apparently in response to an anonymous telephone call and asked to make a safety inspection of the equipment King's Teamster employees were driving. King refused permission, claiming Katsekures was not a qualified safety inspector. While the two men argued, Randy Taylor, a Teamster who accompanied Katsekures to the job site, inspected some of King's trucks and found them unsafe.[5] Katsekures told the Teamster foreman to shut down the work, and the work stopped. King told his drivers that if they did not return to work, he would hire non-union drivers. After the project was shut down for two days, he did hire non-union men and finished the job. King had his attorney send telegrams to Teamster offices asking for arbitration but received no response.

The principal testimony on damages was from King himself and was quite vague. No business records were introduced to substantiate his estimates. He averaged about $50,000.00 per year profit, and he estimated the profit at 10–11 percent of gross income. Without substantiation, he said he lost $27,000.00 as a result of the two-day shutdown. Shortly after the incident in question, he went out of business. He blamed this on the Teamsters. There was no violence in the incident.[6]

One of the non-union workers whom King hired, in his first day on the job, fell asleep at the wheel and ran off the road. The truck, owned by King and valued at $10,000.00–$12,000.00, was totally destroyed. The man had driven all night to reach the job site.

## I. ARBITRATION

The master labor contract contained an Article VI entitled "Grievance Procedure." Section 2 of that article states:

Permanent Board of Arbitration. Should any grievance or complaint arise which cannot be negotiated and settled within the scope of the foregoing paragraphs of this Article, the Employer and the Union agree to submit the matter to the Permanent Board of Arbitration and shall be handled in the following manner:

. . . .

The union urges on appeal that this dispute comes under the arbitration clause and therefore should have been submitted to arbitration instead of becoming the subject of a civil action. King responds: (1) the strike was a material breach of contract that put the entire contract, including the arbitration clause, at an end; (2) it was the Teamsters who refused to arbitrate so they should not be permitted to rely on this ground and (3) this was a one-time occur-

---

**5.** The Teamsters claimed at trial that they had not engaged in a forbidden strike but rather had relied on the clause in the master labor agreement providing that the workers could refuse to work if the working conditions were unsafe. This is not at issue on appeal. There was evidence that the trucks were safe, and that the purpose of the strike was to force King to hire a Teamsters maintenance man in addition to his drivers.

**6.** Three weeks later, Lundgren, the general contractor, suffered sabotage to some of its equipment. No evidence linked this to the Teamsters.

rence in a short-term employment situation, not the type of ongoing employer-employee relationship for which the arbitration clause was intended. Our reading of the applicable law supports the Teamsters' view.

▓▓▓▓ Even though this case is in state court, the law to be applied to this issue is federal labor-management common law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102–03, 82 S.Ct. 571, 7 L.Ed.2d 593, 598–99 (1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); 29 U.S.C. § 185 (§ 301 of the Taft-Hartley Act, Labor Management Relations Act). Federal law applies in suits for breach of labor-management contracts in "industries affecting commerce," and this phrase is given such a broad construction that its application to the instant contract is clear.

▓▓▓▓ Federal law is strongly in favor of arbitration and gives a broad scope to grievance arbitration clauses. Doubts are to be resolved in favor of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409, 1417–18 (1960).

The Supreme Court has held squarely that a broad arbitration clause such as the one in the instant case [7] imposes a duty to arbitrate both alleged union breaches of a no-strike clause and employer's claims for damages arising from a wildcat strike. *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers,* 370 U.S. 254, 261–64, 82 S.Ct. 1346, 8 L.Ed.2d 474, 479–81 (1962). It is presumed, the court

held, that the arbitration clause retains effect even if the no-strike clause has been breached where the work stoppage was a single event of short duration. The employer continues to have a contractual duty to arbitrate rather than sue.[8]

▓▓▓▓ The record is unclear concerning the steps either party took to bring the matter to arbitration.[9] Under controlling federal labor law, the question of whether conditions precedent to arbitration have been met are for the arbitrator to decide. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 555–59, 84 S.Ct. 909, 11 L.Ed.2d 898, 908–10 (1964). Thus, even if King is correct in asserting that the Teamsters wrongfully failed to take the question to arbitration, that fact would not justify bypassing the arbitrator. This federal rule is similar to our decision broadly construing the powers of arbitrators as a corollary of the strong public policy favoring arbitration. *Anchorage Medical & Surgical Clinic v. James,* 555 P.2d 1320 (Alaska 1976).

King's third argument against arbitration is that there is no continuing labor-management relationship. *Textile Workers Union v. Lincoln Mills, supra* 353 U.S. at 459, 77 S.Ct. 912, 1 L.Ed.2d at 982, disposed of this contention. There, the contract had expired, and the employer had ceased business, but the Supreme Court nevertheless held that grievances seeking a monetary award from the employer were not moot and were still subject to arbitration.

▓▓▓▓ We conclude that King's claim was subject to the arbitration clause of the contract, unless arbitration was waived.

---

7. The arbitration clause in the instant contract is found in Article VI of the master agreement.

8. 370 U.S. at 265, 82 S.Ct. 1346, 8 L.Ed.2d at 482. *Accord, United Packinghouse Food and Allied Workers v. Needham Packing Co.,* 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964).

9. An aggrieved party must seek to enforce his contractual right to arbitration before suing for breach of contract. *Charles J. Rounds Co. v. Joint Council of Teamsters No. 42,* 4 Cal.3d 888, 95 Cal.Rptr. 53, 484 P.2d 1397, 1401–02 (Cal.1971), applying federal labor law. In this case, it was the Teamsters who had a grievance over the underlying safety dispute; but King who had a grievance over the strike. On the other hand, with respect to the underlying safety dispute, the contract authorized the Teamsters to stop work until the equipment was made safe for work; it did not require them to continue work while sending the matter to arbitration.

## II. WAIVER OF ARBITRATION

Although federal law is strongly in favor of arbitration of labor disputes [10] and this court has also stated that the law favors arbitration,[11] it is clear that arbitration may be waived.[12]

This case was filed in the superior court on September 18, 1972. On October 20, 1972, an answer was filed by the union. The answer did not contain an affirmative defense that the dispute was subject to arbitration. There was an affirmative defense stating:

12. That according to the Agreement, plaintiff's Exhibit A, and Article VI of the Master Labor Agreement, attached as defendant's Exhibit A, any grievance by plaintiff must be stated formally in writing to the Union.

13. Plaintiff has not exhausted its administrative remedy by compliance with the contract and, therefore initiation of this suit is premature.

Paragraph 12 of the answer refers to the portion of the agreement requiring a formal written statement of the grievance to the union. The vague reference to exhaustion of administrative remedies contained in Paragraph 13 of the same affirmative defense is apparently a reference to this same requirement. The pleading does not comply with the requirement of Civil Rule 8(c) which states in part:

In pleading to a preceding pleading, a party shall set forth affirmatively . . arbitration . . . .

An amended complaint was filed on February 5, 1975. The answer to the amended complaint, which was filed on June 2, 1975, contained the same affirmative defenses as in the original answer.

The union engaged in discovery, taking the deposition of the plaintiff. It was not until November 21, 1975, more than three years after the filing of the case, that the union filed a motion for summary judgment alleging that the dispute was subject to arbitration. Although a request for oral argument was filed by King, neither party noticed the motion for summary judgment for hearing as was then required by Civil Rule 77(g) and (h).[13] The court never ruled on the motion.[14]

The union also referred to the right to arbitrate in its trial memorandum filed on

---

**10.** *United Steelworkers of America v. Warrior & Gulf Navigation Co., supra* 363 U.S. at 582–83, 80 S.Ct. 1347, 4 L.Ed.2d at 1417–18.

**11.** *Anchorage Medical & Surgical Clinic v. James,* 555 P.2d 1320, 1321 (Alaska 1976); *University of Alaska v. Modern Construction, Inc.,* 522 P.2d 1132, 1139 (Alaska 1974); *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280, 283 (Alaska 1973).

**12.** *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir. 1976); *Demsey & Associates v. S. S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir. 1972); *Cornell & Co. v. Barber & Ross Co.,* 123 U.S.App.D.C. 378, 360 F.2d 512, 513 (1966); *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.,* 427 F.2d 924, 929 (5th Cir. 1970); *Butchers Union Local 532 v. Farmers Markets,* 67 Cal.App.3d 905, 136 Cal.Rptr. 894, 899 (Cal.App.1977); *Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.,* 398 F.Supp. 1057, 1058–59 (E.D.N.Y. 1975); *Liggett and Myers, Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047 (S.D.N.Y.1974); *Graig Shipping Co., Ltd. v. Midland Overseas Shipping Corp.,* 259 F.Supp. 929, 931 (S.D.N.Y. 1966); *Cargo Carriers v. Erie & St. Lawrence Corp.,* 105 F.Supp. 638, 639 (W.D.N.Y.1952).

**13.** Civil Rule 77(g) and (h), then in effect, read:

(g) When oral argument has been requested or granted by the court, and all briefs required by this rule have been filed with the clerk, any party may serve and file a notice of hearing at a time at least ten (10) days after the date of service. A request for an extension or continuance of a hearing will not be considered unless application therefor, accompanied by a showing of good cause, is filed within three (3) days after service of the notice of hearing.

(h) Any motion that may be noticed for hearing under this rule, and is not so noticed by counsel within six (6) months from the date of its being filed will be denied at the expiration of that time without notice.

**14.** In *Funding Systems Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir. 1976), the court held that where a defendant has waived an affirmative defense by failing to allege it in his answer or have it included in a pretrial order of the court superseding the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment.

April 20, 1976, shortly before trial commenced on April 27, 1976. Significantly, however, in all the time that the case was pending, the union never initiated arbitration proceedings or endeavored to secure a stay of the trial pending arbitration. The union proceeded with trial of the case, taking its chances on the verdict. Obviously, if the result had been in its favor, it would not have insisted that arbitration was required.

 Thus, the union failed to plead affirmatively a defense of arbitration as required by Rule 8(c), availed itself of discovery procedures which probably were not available under arbitration, delayed for over three years in raising the issue of arbitration and never sought arbitration or a stay of the court proceedings for that purpose. Under those circumstances, we hold that the right to arbitration was waived.

*Weight Watchers of Quebec, Ltd. v. Weight Watchers International, Inc.*[15] is a closely analogous case. There, a franchise agreement provided for arbitration of controversies or claims. Suit was nevertheless brought by the Quebec corporation in July 1973. The defendant answered without affirmatively raising the arbitration defense and moved for summary judgment on the merits in February 1974. Defendant was unsuccessful in obtaining judgment, although the plaintiff was required to amend the complaint in May 1975. In June, defendant moved for an order directing arbitration and for a stay of the action pending completion of the arbitration.[16]

The court stated that in view of the policy favoring arbitration, a waiver is not lightly to be inferred and "mere delay in seeking a stay of the proceedings without some resultant prejudice to a party . . cannot carry the day."[17] It held that where the issue of waiver turns on the significance of action taken in a judicial forum, "the issue is one for the court, rather than the arbitrator, to decide."[18]

The factors upon which the waiver question appears to have turned most frequently against the party seeking to compel arbitration are his dilatory conduct in seeking arbitration, usually coupled with his gaining of an undue advantage in the judicial forum or other substantial prejudice to the opposing party, or any other actions taken by the moving party which are sufficiently inconsistent with his seeking arbitration. Examining the circumstances of a particular case, it is usually the absence of one or more of these factors that forms the basis for concluding there has been no waiver. (footnotes omitted)[19]

The court concluded that, even though no trial had taken place, the elements of delay, prejudice and inconsistent action were too great to avoid a finding of waiver.[20]

Here, the period of delay before raising the issue of arbitration was considerably longer. The union engaged in discovery, and to this date, has never actually requested arbitration. It did not call up for hearing its summary judgment motion and failed to request a stay from the trial court. As a result, there were no rulings of the trial court from which it otherwise could have petitioned for review by this court.

 To require arbitration on the eve of trial when the summary judgment motion was filed would have resulted in substantial prejudice to Mr. King, who would have been making preparations for the trial. If we were to order arbitration now, six and one-half years after the events involved, the prejudice in securing witnesses who could accurately recall the events would be enormous. We agree with the numerous cases holding that there is a waiver when

---

**15.** Cited in Note 12, *supra*.

**16.** 398 F.Supp. at 1060.

**17.** *Id.* at 1058–59, *quoting Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968).

**18.** *See In re Tsakalotos Navigation Corp.*, 259 F.Supp. 210, 212–13 (S.D.N.Y.1966).

**19.** 398 F.Supp. at 1059.

**20.** *Id.* at 1061.

prejudice results from such delay in asserting the duty to arbitrate.[21]

## III. PUNITIVE DAMAGES

The union contends that the award of punitive damages for breach of a labor-management contract is improper under federal labor law. The complaint contained three causes of action in tort as well as the contract claim but only the latter went to the jury.[22] We are thus presented with the question of whether punitive damages are permissible for a single breach of a labor-management contract under the circumstances here involved.

 Federal labor-management common law governs this issue [23] as in the case of arbitration. The union argues that federal labor law is remedial, not penal, and that punitive damages are not available for breach of contract.

The principle that federal labor law is remedial in character, with the goal of preserving industrial peace as well as doing justice between the parties, is almost as old as federal labor jurisdiction itself. It was laid down in *Republic Steel Corp. v. N.L.R.B.*, 311 U.S. 7, 11–12, 61 S.Ct. 77, 85 L.Ed. 6, 10 (1940). The N.L.R.B. had ordered Republic to reimburse the government for welfare payments to employees Republic had wrongfully discharged. This order was set aside by the Supreme Court, which held that the purpose of the N.L.R.B. was not to vindicate public rights, to punish wrongdoers or levy fines. The Supreme Court has never considered whether this principle bars punitive damages in suits on labor-management contracts. The leading case to hold that the *Republic Steel* principle does bar punitive damages is *Local 127, United Shoe Workers v. Brooks Shoe Mfg. Co.*, 298 F.2d 277, 283 (3rd Cir. 1962) (en banc).[24]

21. *Gutor International AG v. Raymond Packer Co., Inc.*, 493 F.2d 938, 945 (1st Cir. 1974); *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.*, 436 F.2d 405, 407–09 (5th Cir. 1971); *Cornell & Co. v. Barber & Ross, supra* Note 12 at 513; *E. I. du Pont de Nemours & Company v. Lyles & Lang Construction Co.*, 219 F.2d 328, 334 (4th Cir. 1955) (dictum), *cert. denied*, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280 (1955); *American Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 318–20 (6th Cir. 1950); *American Locomotive Co. v. Chemical Research Corporation*, 171 F.2d 115, 121–22 (6th Cir. 1948), *cert. denied*, 336 U.S. 909, 69 S.Ct. 515, 93 L.Ed. 1074 (1949); *Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co.*, 128 F.2d 411, 413 (7th Cir. 1942); *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319–20 (4th Cir. 1938); *La Nacional Platanera, S.C.L. v. North American Fruit & Steamship Corp.*, 84 F.2d 881, 882–83 (5th Cir. 1936); *Liggett & Myers, Inc. v. Bloomfield, supra* Note 12 at 1047–48; *Graig Shipping Co. v. Midland Overseas Shipping Corp., supra* Note 12 at 931; *United Nations Children's Fund v. S/S Nordstern*, 251 F.Supp. 833, 840 (S.D.N.Y.1966); *Instituto Cubano de Establizacion Del Azucar v. The S/S Rodestar*, 143 F.Supp. 599, 600 (S.D.N.Y.1956); *Cargo Carriers v. Erie & St. Lawrence Corp., supra* Note 12 at 639; *The Belize*, 25 F.Supp. 663, 664 (S.D.N.Y.1938), *appeal dismissed*, 101 F.2d 1005 (2d Cir. 1939). Our holding that the defense of arbitration is subject to waiver, by inference, adversely disposes of the union's claim that failure to submit the dispute to arbitration was jurisdictional as

to subject matter and thus able to be raised at any time.

22. The Teamsters do *not* argue that, assuming punitive damages are proper in labor contract suits, the evidence of malice and oppression was insufficient to justify a punitive award in this case.

23. While it must yield to overriding aims of federal labor policy, general state law, if compatible with the purpose of § 301, is of some relevance in formulating federal labor common law. *Textile Workers Union v. Lincoln Mills*, 353 U.S. at 457, 77 S.Ct. 912, 1 L.Ed.2d at 981.

24. *Navajo Freight Lines, Inc. v. Teamsters, Local 961*, 291 F.Supp. 908, 910 (D.Colo.1968); *Dow Chemical v. International Union of Electrical, Radio and Machine Workers*, 82 LRRM 3169 (D.C.N.D.Fla.1971), *appealed and affirmed on other grounds*, 480 F.2d 433 (5th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *Watson v. Truck Drivers, Local 728*, 62 LRRM 2440 (D.C.N.D.Ga. 1964); *see United Steelworkers v. Butler Mfg. Co.*, 439 F.2d 1110, 1112–13 (8th Cir. 1971); *College Hall Fashions, Inc. v. Philadelphia Joint Board, A.C.W.A.*, 408 F.Supp. 722, 727–28 (E.D.Pa.1976); *United Aircraft v. I.A.M.*, 68 LRRM 2488 (Conn.Superior Ct. Hartford County 1968); *but see, Sidney Wanzer & Sons, Inc. v. Milk Drivers Union*, 249 F.Supp. 664, 670–71 (N.D.Ill.1966).

Restatement of Contracts § 342 (1932), and 5 Corbin, Contracts § 1077 (1964), say flatly that punitive damages may not be awarded for breach of contract. This is a corollary of the *Hadley v. Baxendale* [25] rule that only reasonably foreseeable damages may be awarded for breach of contract. (*See generally, Skagway City School Bd. v. Davis,* 543 P.2d 218, 225–28 (Alaska 1975).) It also permits zealous advocacy of contract interpretations that are subject to reasonable dispute, without fear of punitive damages for an erroneous interpretation. *See generally,* Brandwen, Punitive-Exemplary Damages in Labor Relations Litigation, 29 U.Chi.L.Rev. 460 (1962). [26]

King seeks to bring the Teamsters' conduct within a recognized exception to the general common law rule that a breach of contract which is also a breach of a duty imposed by law may be the subject of punitive damages. Most such cases, however, concern public utilities and common carriers; many are cited in *United Shoe,* 298 F.2d at 283 n.3. King's business does not involve similar considerations.

There are a few cases which have awarded punitive damages for breach of labor-management contracts. The leading case is *Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, supra* Note 22; *see* Note, 80 Harv.L. Rev. 903 (1967). The *Wanzer* court considered and distinguished *United Shoe.* In *Wanzer,* the evidence suggested that the union had attempted to compel payment of disputed overtime wages by refusing to take the matter to arbitration and engaging in periodic wildcat strikes prohibited by the contract. The court agreed with the employer that only stern measures such as punitive damages offered any hope of remedying the rapidly deteriorating situation. On those facts, it considered punitive damages remedial, not penal. [27]

*Wanzer* is readily distinguishable. It involved a final, drastic attempt to cure deteriorating but still extant labor-management relations. *United Shoe* and the instant case both involved employers who had shut down between the time of the dispute and the time of trial. Second, in *Wanzer,* there apparently was a pattern of repeated unlawful conduct instead of the one-time incident which took place in the instant case. [28] Finally, the jury instruction in this case permitted punitive damages as an example to other would-be wrongdoers, [29] a ground for punitive damages which *Wanzer* clearly rejected. 249 F.Supp. at 670–71. [30]

While there may be some circumstances where punitive damages may be allowable in contract actions, [31] we do not

---

**25.** 9 Exc. 341, 156 Eng.Rep. 145 (1854).

**26.** This court expressed a widely-accepted principle when it recently noted that, even in tort cases, punitive damages are not favored and "are to be allowed only with caution and within narrow limits." *Alaska Placer Co. v. Lee,* 553 P.2d 54, 61 (Alaska 1976).

**27.** 249 F.Supp. at 669. *Accord, Patrick v. I. D. Packing Co., Inc.,* 308 F.Supp. 821, 823–24 (S.D.Iowa 1969).

**28.** *See Central Appalachian Coal Co. v. United Mine Workers of America,* 376 F.Supp. 914 (S.D.W.Va.1974), another "pattern of conduct" case involving more than the single incident alleged here.

**29.** The union objected to giving punitive damage instructions to the jury contending that they were not recoverable as a matter of law.

**30.** Punitive damages may be awarded a union member suing his union under § 185 for breach of its duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 196, 87 S.Ct. 903, 17 L.Ed.2d 842, 861 (1967). But fair representation suits are rooted in tort concepts; they are not suits for breach of contract. The duty of fair representation is imposed by federal law, not by labor contracts. The contracts are between union and employer; the fair representation issue arises between union and employee. *See Bald v. RCA Alascom,* 569 P.2d 1328 (Alaska, October 14, 1977).

**31.** Some states have permitted punitive damages for breach of contract when the breach is

believe that the single work stoppage in this case justifies an exception to the well-established rule against allowance of punitive damages for breach of labor contracts. We conclude that it was error to submit the issue of punitive damages to the jury and that the award for punitive damages must be reversed.

## IV. SERVICE ON INTERNATIONAL UNION

The complaint and amended complaint named two defendants—the International Brotherhood of Teamsters and Teamsters Local 959. The proofs of service, which are not in the record on appeal, reveal that both defendants were served by personal delivery of the summons and complaint to Jesse Carr, Secretary-Treasurer of Local 959, in Anchorage. The Local answered. The International, through the same counsel, moved to dismiss the action for want of effective service and for want of personal jurisdiction. The court entered an order quashing the service on the International but said that if the plaintiff could make effective service on the International, the action against that defendant could proceed.

■ This question is governed by state, not federal, law. *See Dixie Carriers, Inc. v. Nat'l Maritime Union*, 35 F.R.D. 365, 369 (S.D.Tex.1964). It is a question of first impression in Alaska.

King's theory on the merits apparently was that the Local was the agent of the International, and that the International was therefore vicariously liable for the Local's actions. The Local, not the International, was a party to the contracts in question.

Civil Rule 4(d)(6) provides that an unincorporated association may be served by personal delivery of the summons and complaint to "an officer, a managing or general agent, or to any other person authorized by appointment or by law to receive service of process."

■ The rule is that, without more, a local or the agent of a local is *not* the agent of an international union for purposes of service.[32]

The facts of an individual case may reveal that a local is in fact the agent of the international, in which case, service on the local would be service on the international. The factual question in each case is the degree of autonomy which the local enjoys.[33]

Several cases have considered whether locals of the Teamsters were agents of the International. *Morgan Drive Away, Inc. v. Int'l Brotherhood of Teamsters*, 268 F.2d 871 (7th Cir.), *cert. denied*, 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959), held that they were not, and quashed service of the International made on an officer of a local. *Int'l Brotherhood of Teamsters v. United States*, 275 F.2d 610 (4th Cir.), *cert. denied*, 362 U.S. 975, 80 S.Ct. 1060, 4 L.Ed.2d 1011 (1960), and *Price v. Int'l Brotherhood of Teamsters*, 46 F.R.D. 18 (E.D.Pa.1969), both held that the locals in question were agents and upheld the service. In the latter two

---

malicious or grossly reckless. *See, e. g., Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 453 P.2d 551, 557 (1969); *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368, 378 (1967); D. Dobbs, Handbook on the Law of Remedies § 3.9 at 207 (1973). Other states follow the rule that punitive damages may be recovered when breach of contract also constitutes an independent tort. *See, e. g., Singleton v. Foreman*, 435 F.2d 962, 971 (5th Cir. 1970) (application of Florida law); *Gonzalez v. Allstate Ins. Co.*, 217 Kan. 262, 535 P.2d 919, 922 (1975).

**32.** *See, e. g., Farnsworth & Chambers Co., Inc. v. Sheet Metal Workers*, 125 F.Supp. 830 (D.N.M.1954); *Daily Review Corp. v. Int'l Typographical Union*, 9 F.R.D. 295 (E.D.N.Y.1949); *Isbrandtsen Co. v. Nat'l Marine Engineers' Beneficial Ass'n*, 9 F.R.D. 541 (S.D.N.Y.1949).

**33.** *See, e. g.,* the cases cited Note 32. Annot., 23 A.L.R.Fed. 948, 955–60, §§ 5 and 6 (1975).

cases, the locals involved were under trusteeship, an arrangement which apparently leaves the local with almost no autonomy.

 King, as plaintiff, had the burden of proving the validity of the attempted service of process. *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279, 294 (Alaska 1976). Since he presented no evidence by affidavit or otherwise in response to the motion to dismiss, the trial court's decision against him on this issue was correct.

## V. REMITTITUR

King's other point on cross-appeal is that the trial court should have entered judgment on the jury verdict for $214,000.00 actual damages, rather than remitting the award down to $30,000.00. The remittitur was granted in response to the Teamsters' motion for a new trial. The grounds in the motion for new trial were that both the finding of liability and amount of damage were manifestly unjust, contrary to the evidence, and the result of passion or prejudice. The remittitur was granted on the ground that the $214,000.00 award could not reasonably be supported by the evidence. The trial judge specifically stated that he did not find passion or prejudice.

We discussed the standard for review of orders granting or denying a remittitur in *Hash v. Hogan,* 453 P.2d 468, 471–73 (Alaska 1969). In *Hash,* we upheld the granting of a remittitur whereby a $5,000.00 award of punitive damages was remitted to $500.00. We quoted from *National Bank of Alaska v. McHugh,* 416 P.2d 239, 244 (Alaska 1966), as follows: [34]

> We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. *In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in response to appellant's motion.* (emphasis in original)

 Thus, in order to reverse the granting of a remittitur, we would have to be left with the definite and firm conviction that the judge made a mistake in granting the remittitur or ordering a new trial.

 Here, the evidence presented as to damages was very vague. It consisted solely of the testimony of Mr. King. The actual damages claimed were $12,000.00 for a truck which an exhausted substitute driver wrecked, $27,000.00 for the two-day work stoppage and $214,000.00 in lost profits. There was adequate proof for neither the fact of this last item of damages nor its foreseeability from the breach of contract. The vague testimony as to damages for the two days loss of profits and the value of the truck was of such a nature that we are not left with the firm conviction that the judge made a mistake in granting the remittitur. The judge was within his discretion in remitting the award of actual damages.[35]

Nevertheless, we do not agree with the Teamsters that the trial court erred in not granting a complete new trial. They contend that the trial court's finding that the $214,000.00 verdict was not the result of passion and prejudice is clearly erroneous. It bases its argument on the amount of that award plus the allowance of substantial punitive damages and certain derogatory remarks about the union and its officials.

**34.** 453 P.2d at 472.

**35.** The argument is made that King's acceptance of the reduction in the compensatory damage award bars it from any subsequent challenge to that award as modified. Because of our disposition of this case, we need not reach this issue. *See generally, Donovan v. Penn Shipping Co., Inc.,* 429 U.S. 648, 97 S.Ct. 835, 51 L.Ed.2d 112 (1977).

The remedy, when a verdict is tainted by passion and prejudice, is a complete new trial, not a new trial on damages or a remittitur.[36] Here, Mr. King's testimony, regardless of its weakness, provided a factual basis for the award of $214,000.00 or more actual damages. The verdict for punitive damages was for less than two-thirds that amount, against a defendant of substantial power and wealth. We are unable to say that the judge erred in finding that the verdict was not the result of passion and prejudice. The trial court did not abuse its discretion in denying a complete new trial.

The judgment below is reversed as to the award of punitive damages, but otherwise affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

BURKE, J., not participating.

---

**36.** *Hash v. Hogan, supra* at 473.